(202 P.3d 691)
No. 99,451

SHELLY K. HERRELL, *Appellee*, v. NATIONAL BEEF PACKING
COMPANY, LLC, *Appellant*, and TERRACON CONSULTANTS,
INC. AND LIBERTY MUTUAL FIRE INS. COMPANY, *Appellees*.

Opinion filed February 27, 2009.

*David J. Rebein* and *Aaron L. Kite,* of Rebein Bangerter PA, of Dodge City, for appellant.

*Matthew L. Bretz* and *Mitchell W. Rice,* of Bretz Law Offices, of Hutchinson, for appellee Shelly K. Herrell.

Before McANANY, P.J., GREEN and BUSER, JJ.

GREEN, J.: In this premises liability case, a subcontractor's employee, Shelly K. Herrell, was injured when she stepped into a hole in the concrete floor of the landowner's (National Beef Packing Company [National Beef]) plant. Herrell was working at the plant to obtain soil samples for testing. Herrell sued National Beef, alleging that National Beef was negligent in creating, maintaining, and failing to warn of the dangerous condition; in violating an Occupational Safety and Health Administration (OSHA) regulation; in failing to inspect the premises; and in failing to keep the business place safe. Because Herrell's injuries were covered by workers compensation, National Beef asserted that Herrell's claims of negligence were barred by the rule and the policy reasons established in *Dillard v. Strecker,* 255 Kan. 704, 877 P.2d 371 (1994).

In *Dillard,* our Supreme Court stated that a landowner was not liable for the negligence of an independent contractor which resulted in a work-related injury to an employee of the independent contractor when the employee was covered by workers compensation. 255 Kan. 704, Syl. ¶ 3. The trial court disagreed, determining that *Dillard* did not control because National Beef had created the dangerous condition of the hole by continuing to operate the plant during the construction. The question before us is whether Herrell's claims of negligence against National Beef in causing her injuries are controlled by the *Dillard* holding.

Although *Dillard* limited its decision to two theories of landowner liability—breach of a nondelegable duty assigned by statute or ordinance and vicarious liability when the work being performed is of an inherently dangerous nature—the *Dillard* court cited with approval authorities from other jurisdictions that precluded a contractor's employee claim for injury even when the employee made a claim of liability based on the negligent acts of the landowner. Moreover, the "policy reasons" stated in *Dillard* would preclude Herrell's claims of negligence against National Beef just as the claims of vicarious liability and peculiar risk were precluded in *Dillard.* Accordingly, we reverse and remand with directions to the trial court to enter judgment in favor of National Beef.

National Beef contracted with J-A-G Construction Company (J-A-G) to act as a general contractor for the construction of a new roof on its rendering facility in Dodge City. During the roofing project, National Beef continued to operate the rendering facility, where cow intestines, blood, and other nonconsumable meat products (which are called rendering) were known to spill onto and cover the floor of the plant.

As a part of the construction project, large holes—approximately 2 feet deep and 8 to 10 inches in diameter—were excavated in the rendering plant's existing floor for concrete pillars to support the new roof. J-A-G subcontracted with Terracon Consultants, Inc. (Terracon), a consulting engineering company, to test the soil in the holes.

Terracon's employees Shane Harper and Herrell arrived at the rendering facility to conduct the soil tests. After they signed in with National Beef's security at the gate to the plant, a J-A-G foreman took Harper and Herrell through the rendering plant to the site of the holes where they were to obtain soil samples for testing. The holes were surrounded by sandbags.

Harper and Herrell returned to their truck to get the equipment necessary for the soil sampling. As they were walking alone through the rendering plant back toward the job site with their equipment, Herrell stepped off of a small ledge and fell into an unmarked hole that had become covered in rendering, injuring her ankle and knee.

Herrell collected workers compensation benefits from Terracon. Herrell also filed a separate lawsuit against National Beef, generally alleging in her petition that National Beef was "negligent in maintaining a dangerous condition; in failing to warn of the dangerous condition; and in other respects."

National Beef moved for summary judgment, claiming it was not liable because it had no notice of the hole and because it did not control the area where the accident occurred. National Beef also argued that under the rule announced in *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), it could not be held liable to Herrell because she had been injured while working on National Beef's premises as an employee of a subcontractor who was covered by workers compensation. In denying summary judgment on this ground, the trial court explained:

"The Court notes that [*Dillard*] states, 'However, while the liability of the employer is limited, the employee can still bring an action against and recover damages from a negligent third party. K.S.A. 44-504(a) . . . .'

"In this instance, [National Beef] was continuing its normal working operations while a construction project was under way. Had [National Beef] vacated the premises and allowed [J-A-G] and its subcontractors exclusive access to and possession of the area under construction, their motion would be well founded.

"However, the facts indicate to this Court that the rendering products that may have filled and obscured the hole that [Herrell] stepped into were there because of the actions of Defendant National Beef. It appears there are comparative fault issues that cannot be determined through a motion for summary judgment."

At trial, National Beef moved for a directed verdict, again arguing that the holding in *Dillard* dictated that Herrell could recover no more from National Beef than if she were National Beef's own employee, that is, she was limited to recovering workers compensation benefits. The trial judge again concluded that the rule of nonliability of the landowner announced in *Dillard* was inapplicable, stating:

"This situation is one that I agree with [Herrell's attorney]. The hole itself is not inherently dangerous. Covering the hole with rendering makes it dangerous. The entire operation could have been turned over to [J-A-G]. And, had National Beef left the area, then clearly the cases cited by [National Beef] starting with *Dillard vs. Strecker* would be applicable. But that's not the case.

"They continued working there. They covered the floor with a substance that it hid dangerous holes in this case. They should have known that under the circumstances they were creating a dangerous situation."

The case was submitted to the jury to determine the comparative fault, if any, of Herrell, National Beef, J-A-G (including its subcontractors), and Terracon. As to National Beef's fault, the trial court instructed the jury as follows:

"The Plaintiff Shelly K. Herrell claims that she sustained injuries and damages due to the fault of the defendant National Beef Packing Company, LLC, in the following respects:

"a. In creating an unreasonably dangerous condition by operating the rendering plant in such a manner to cause rendering to spill on the floor causing holes in the floor to become filled with rendering and hidden from the view of persons walking on the floor;

"b. In maintaining an unreasonably dangerous condition by failing to timely remove the renderings from the floor which resulted in the hole not being visible;

"c. In failing to provide adequate protection and warning from dangerous conditions such as a warning, cone, metal grate, or caution tape, so that people would be warned that the rendering caused holes in the floor to be hidden;

"d. In failing to keep the business place safe;

"f. In removing the metal grate, thereby leaving the hole hidden and exposing people to a risk of falling in a hidden hole;

"g. In failing to inspect the business premises; and

"h. In creating an unreasonably dangerous condition by operating the rendering plant while construction was in progress, causing rendering to spill on the floor and hiding from view potentially dangerous conditions.

"The Plaintiff Shelly K. Herrell further claims that she sustained injuries and damages due to the fault of the defendant National Beef Packing Company, LLC, by not complying with the industry standard set out in OSHA Reg. 1910.23(a)(8) which requires every floor hole into which persons can accidentally walk to be guarded by either: (i) a standard railing with standard toeboard on all exposed sides, or (ii) a floor hole cover of standard strength and construction. While the cover is not in place, the floor hole shall be constantly attended by someone or shall be protected by a removable standard railing."

The jury ultimately returned a verdict assessing fault for Herrell's total damages of $251,197.86 as follows: National Beef—47.5%; J-A-G—32.5%, Terracon—15%; and Herrell—5%.

DOES KANSAS SUPREME COURT PRECEDENT BAR THE EMPLOYEE OF AN INDEPENDENT CONTRACTOR FROM SUING THE LANDOWNER UNDER *ANY* THEORY OF NEGLIGENCE?

National Beef's sole contention on appeal is that the trial court erred in not concluding, based on the principles and legal reasoning articulated in *Dillard,* that it was entitled to judgment as a matter of law. National Beef argues that under *Dillard,* it owed no duty to Herrell because her injuries were covered by workers compensation. As a result, National Beef argues that workers compensation was the exclusive remedy, regardless of the question of negligence. Herrell, on the other hand, counters that National Beef has read too much into *Dillard* and argues that *Dillard* was specifically limited to the claims and facts of that case by the court, and the claims and facts in this case are. different.

*Standard of Review*

To establish a claim of negligence against National Beef, Herrell must show the following: National Beef owed her a duty of care; National Beef breached that duty; she suffered injury; and there existed a causal connection between the duty breached and the injury she suffered. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

National Beef contends that the undisputed facts negate the duty element of Herrell's negligence claim against it. Thus, the only issue before this court is the existence of a duty—or, more pointedly, to whom that duty extends—which is a question of law. See 285 Kan. at 39. Accordingly, this court has unlimited review of the trial court's conclusion that National Beef owed a duty to Herrell. See *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005).

*Dillard's Limitation of Landowner's Liability to Employee of Independent Contractor*

Generally, an occupier of land owes a duty of reasonable care under the circumstances to all entrants on the property who are present with the owner or occupier's consent. See *Jones v. Hansen,* 254 Kan. 499, 509, 867 P.2d 303 (1994). Part of Herrell's theory

of National Beef's liability was that it created, maintained, and failed to warn of the dangerous condition that caused her injuries—the rendering-covered hole. See *D.W. v. Bliss*, 279 Kan. 726, 740, 112 P.3d 232 (2005) (recognizing the required showing of notice for a claim against a landowner for an injury resulting from a dangerous condition); Restatement (Second) of Torts § 343 (1964) (possessor of land's liability for dangerous conditions known to or discoverable by the possessor).

In *Dillard*, our Supreme Court determined that the landowner's general duty of reasonable care did not—on the facts and theories of liability advanced by the plaintiffs in that case—extend to an employee of an independent contractor covered by workers compensation insurance. 255 Kan. at 726-27.

*Dillard* was also a premises liability case involving a construction project. The defendant, a Roman Catholic Archbishop, contracted with A.J. Huber and Sons, Inc. (Huber), for construction work on a church and school. Huber, in turn, subcontracted masonry work for the project with P&S Masonry, Inc. During construction, Lee Dillard, a P&S employee, was seriously injured when a masonry wall collapsed and crushed him. Lee Dillard was covered by workers compensation.

Lee Dillard and other family members sued the Archbishop for negligence based on two theories. First, the Dillards alleged that as the landowner, the Archbishop was directly liable for breaching his nondelegable duty: by violating a provision in the local building code that required the landowner to hire an independent building inspector to monitor the construction of the wall. The Dillards maintained that by breaching that duty, the Archbishop was liable to Lee Dillard for his resulting injuries.

Second, the Dillards alleged that the Archbishop was vicariously liable for the subcontractor's negligence because Lee Dillard was performing an inherently dangerous activity.

The Archbishop argued it owed no duty to Lee Dillard because he was an employee of an independent contractor. The trial court agreed and dismissed the Dillards' petition for failure to state a claim.

On petition for review of this court's decision affirming the trial court, our Supreme Court identified the dispositive issue before it in *Dillard* as follows:

"[W]hether a landowner who engages an independent contractor, who is covered by workers compensation, may be liable for work-related injuries to employees of the independent contractor *under two exceptions to the common-law rule that one who engages an independent contractor is not liable for the negligence of the contractor or the employees.* . . . [T]he two exceptions asserted here are direct liability of the landowner for violation of a nondelegable duty imposed by a city ordinance and vicarious liability when the work being performed by the independent contractor is of an inherently dangerous nature." (Emphasis added.) 255 Kan. at 709-10.

The *Dillard* court then undertook an extensive analysis of the policy considerations and rationale underlying the holdings of a majority of other jurisdictions that the answer to the issue was no—the landowner is not liable under the two exceptions or theories of liability asserted by Lee Dillard. 255 Kan. at 710-25; see *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988); *Parker v. Neighborhood Theatres*, 76 Md. App. 590, 547 A.2d 1080 (1988); *Matteuzzi v. The Columbus Partnership, L.P.*, 866 S.W.2d 128 (Mo. 1993); *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. 1991); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash. 2d 274, 635 P.2d 426 (1981); *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029, 1032 (Wyo. 1987). The *Dillard* court also acknowledged the authorities representing the contrary minority view, but it found that they were inapposite because they failed to address the policy considerations recognized by the other jurisdictions relied upon by the court in arriving at its holding. 255 Kan. at 721-22.

Ultimately, the *Dillard* court concluded:

"Kansas has clearly recognized the inherently dangerous activity doctrine. However, the fact that the doctrine has been recognized and applied in Kansas is not determinative of the case now before us. None of the Kansas cases we have found addressed the issue of the effect of workers compensation on the applicability of the inherently dangerous activity doctrine under facts similar to the present case. The various policy reasons precluding liability of a landowner for injuries suffered by an employee of an independent contractor covered by workers compensation were not raised or considered in our earlier cases. We find the various policy

provisions discussed in the various cases cited herein not only persuasive but also determinative of this case. The policy reasons include:

"(1) The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee.

"(2) The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees.

"(3) Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor.

"(4) Employees of an independent contractor, and their dependents, are protected under the provisions of the workers compensation statutes.

"(5) Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly.

"(6) Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and methods of avoiding such risks that an independent contractor engaged in such activity possesses.

"(7) Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work.

"(8) To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous activity doctrine would (a) reward landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury.

"(9) A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor." *Dillard*, 255 Kan. at 725-26.

## Based on these policies, the *Dillard* court stated the following:

"(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance.

"(2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation.

"(3) Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion." 255 Kan. at 726-27.

Herrell insists that the trial court properly determined that the *Dillard* holding is factually distinguishable. Moreover, Herrell argues that the *Dillard* limited holding does not legally bar her negligence cause of action against National Beef. Herrell argues that she did not seek to recover from National Beef under the inherently dangerous activity doctrine or for breach of a nondelegable duty imposed upon the landowner by statute or ordinance: the two theories of landowner liability relied upon in *Dillard* to which the holding is explicitly limited. Rather, Herrell contends that she sought to recover from National Beef based solely on its own negligence for creating, maintaining, and failing to warn of a dangerous condition, that is, she maintains "the hole in the concrete was hidden because [National Beef] caused the floor to be covered in rendering." In support, Herrell argues that the allegations in *Dillard* of the Archbishop's direct liability for failing to get an inspection required by city ordinance are "[v]ery different than actually taking an active role in creating a dangerous condition causing an injury" as National Beef allegedly did in this case.

Yet, as National Beef points out, Herrell overlooks the fact that one of the theories she advanced against National Beef's negligence was National Beef's failure to comply with an OSHA regulation governing measures to be taken in guarding floor holes into which persons can accidentally walk. In light of the *Dillard* holding that a landowner is not liable to an employee of an independent contractor covered by workers compensation for injuries sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance, it is apparent that National Beef cannot be held liable to Herrell for the violation of an OSHA regulation. 255 Kan. 704, Syl. ¶ 3.

Moreover, several other theories of National Beef's liability would have been improper under the *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994) decision. Specifically, Herrell's submissions to the jury that National Beef was at fault "d. In failing to keep the business place safe," and "g. In failing to inspect the business premises," are questionable. Both theories fall within *Dillard*'s holding that a landowner is not liable to an employee of an independent contractor covered by workers compensation for in-

jury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance. Those statutes or ordinances are generally enacted and impose duties upon landowners for safety purposes—such as the nondelegable duty of inspections imposed on the landowner by the city building code in *Dillard*. See 255 Kan. at 706; Restatement (Second) of Torts § 424 (1964) (recognizing as an exception to the general rule of § 409 that an employer of an independent contractor is not liable for physical harm caused to another by act or omission of the contractor or his servants: "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.").

The jury was instructed that it was not required to agree on which specific negligent act or omission caused Herrell's injuries and damages. It is impossible to tell from the jury's general verdict if the percentage of fault it attributed to National Beef was based upon a theory precluded by the *Dillard* decision. When a jury returns a general verdict and one theory of liability upon which the verdict may have rested was erroneous and when it is impossible to determine whether the jury relied upon the improper ground, the verdict cannot stand. See *Franklin v. Northwest Drilling Co., Inc.*, 215 Kan. 304, 315, 524 P.2d 1194 (1974) ("We state the rule as follows: In the absence of special findings by the jury, when an instruction is given on a theory of a case which is erroneous as a matter of law and the instruction is inclined to lead the jury to attach undue significance to evidence bearing upon another theory properly submitted, a reversal is required in the interest of fairness, even though the jury returned a general verdict. [Citations omitted.]").

Because reversal is required based on at least one of the previously mentioned improper theories, this court must determine if remand for a new trial on any of Herrell's remaining theories of National Beef's negligence for its creation, maintenance, and failure to warn of a dangerous condition is warranted.

*Dillard* is not as easily distinguishable as Herrell suggests. As National Beef argues in its brief, the public policy considerations underlying the *Dillard* holding—when read alone—would seem to equally apply to hold National Beef was not liable to Herrell on those theories as well: because she was an employee of an independent contractor covered by workers compensation. Accordingly, the issue becomes as follows: Can a landowner who engages an independent contractor, who is covered by workers compensation, be liable for work-related injuries to employees of the independent contractor for physical harm caused to the employees by a dangerous condition on the land under Restatement (Second) of Torts § 343 (1964)?

National Beef insists that the trial court's interpretation of *Dillard* runs counter to *Dillard*'s public policy considerations. Specifically, National Beef argues as follows:

"*Dillard* says nothing about requiring a landowner sued by the employee of a subcontractor to show that the premises were 'deserted' or in the exclusive control of someone else. The *Dillard* court was concerned about the relationship of the parties in light of the public policies underlying the Kansas workers compensation and workplace laws, not the occupation and control of the area where an accident occurs. As such the trial court's concern over the control of an area where the accident occurred should be disregarded.

". . . *Dillard* does not draw distinction between activity undertaken by a landowner that may affect the area where the accident occurs and the liability of the landowner. . . . [T]he *Dillard* case is based on legal relationships among landowners, on the one hand, and contractors, subcontractors, and their employees, on the other hand. It is not based on factual distinctions that relate to the area where an accident may have occurred, such as whether the alleged negligence of the landowner was 'active' or 'passive' in nature."

National Beef further contends that *Dillard*'s holding is a limiting interpretation of K.S.A. 44-504(a). That statute allows an employee, whose exclusive remedy from his or her employer is under the Workers Compensation Act, to bring an action against and recover damages from a third party. See *Dillard,* 255 Kan. at 709 (recognizing "[t]he bulk of the cases in which recovery against a third party has been allowed [under K.S.A. 44-504(a)] involve factual situations where the alleged negligence of a third party was not directly related to the work being performed by the injured

employee, such as automobile accidents, medical malpractice, product liability, and similar actions"). According to National Beef, the rule announced in *Dillard*

"provides us with a definition of the type of 'third party' or 'other person' who can be sued under that statute, clarifying that K.S.A. 44-504(a) is intended to allow suits against unknown and unrelated third parties, not landowners upon whose ground and upon whose behalf (however directly) the injured employee was, by permission, doing his or her work."

National Beef further notes that it could not invoke the "statutory employer" defense under K.S.A. 44-503(a) because building a roof was not an activity it ordinarily performed or was the activity inherent or integral to its meat packing business. Rather, National Beef contracted out the work to J-A-G as an expert. Thus, National Beef argues that it "stands in the same position as the Archbishop in *Dillard* and must rely on that case."

Finally, National Beef cites this court's recent opinion in *Dye v. WMC, Inc.*, 38 Kan. App. 2d 655, 172 P.3d 49 (2007). Interestingly, Herrell also summarily asserts that *Dye* supports her position.

In *Dye*, this court reversed the trial court's dismissal of the plaintiffs' wrongful death petition filed against a hospital for failure to state a claim. 38 Kan. App. 2d at 655-59, 666. One theory of liability advanced by the plaintiffs was that the hospital breached a duty owed to decedents to exercise reasonable care to employ a competent and careful contractor. This theory of liability is another exception to nonliability of the landowner to an independent contractor's employee for injuries caused by the negligence of an independent contractor as recognized in Restatement (Second) of Torts § 411 (1964). 38 Kan. App. 2d at 662-64. The hospital argued it did not owe the decedents any duty through its contract with their employer.

Given the procedural posture of *Dye*, this court could not determine from the record what the decedents' employment status was or the exact nature of the relationship between the hospital and the independent contractor (the air ambulance operator). See 38 Kan. App. 2d at 664. Nevertheless, the *Dye* court identified possible scenarios dependent upon the decedents' employment

status that could present themselves on remand and require a finding of no duty on the hospital's part.

In particular, citing *Dillard*, the *Dye* court determined that the employment status could involve the first impression issue of whether an independent contractor's employee qualifies as a "third person" for purposes of the exception to the nonliability of landowner to employees of independent contractors set forth in Restatement § 411. 38 Kan. App. 2d at 664-65. *Dye* recognized that other courts had generally held for policy reasons that the independent contractor's employee was not a "third person" to whom a duty was owed for purposes of Restatement § 411. 38 Kan. App. 2d at 665. *Dye* then concluded that the policy reasons laid out by our Supreme Court in *Dillard* in support of its decision to limit the liability of landowners to employees of independent contractors "seem applicable to Restatement § 411." 38 Kan. App. 2d at 666.

*Dye*, however, is admittedly distinguishable in that it involves divergent facts and theories of negligence. Except for its recognition of the policies in *Dillard* as *possibly* supporting a position on unknown facts, *Dye* does not lend direct guidance with respect to the viability of the claims brought by Herrell.

Indeed, if just the policy reasons set out in *Dillard* are considered, National Beef's position would be correct. The policy considerations support a conclusion that an employee of an independent contractor covered by workers compensation insurance cannot recover in negligence from the landowner, regardless of the employee's underlying theory of the landowner's liability. Moreover, some nonbinding authorities have interpreted *Dillard* in this way.

For example, Professors William E. Westerbeke and Stephen R. McAllister stated that "[t]he result in *Dillard* [was] not unfair under its specific facts": "The plaintiff was covered by workers' compensation, and public policy considerations can fairly support an interpretation of the nondelegable duty exception to exclude such a covered worker." Westerbeke & McAllister, *Survey of Kansas Tort Law: Part I,* 49 Kan. L. Rev. 1037, 1096 (2001). In addition, they pointed out that the policy reasons "would apply equally to both exceptions [the peculiar risk doctrine and the breach of a nonde-

legable duty imposed by statute or ordinance] to the rule of employer nonliability." 49 Kan. L. Rev. at 1096.

In addition, authors of one article for the Journal of the Kansas Bar Association regarding premises liability also broadly concluded that the *Dillard* court "held that landowners are *not* liable for injuries to the employees of independent contractors performing work on their premises." (Emphasis added.) Giffin and Stayton, *Landowners Beware: The Current Status of Premises Liability in Kansas,* 64 J.K.B.A. 18, 23 (Jan. 1995). The authors further broadly described the *Dillard* holding without limitation as follows: "[T]he employee is limited to recovery under the Act for injuries sustained on the job and is not entitled to recovery against the landowner." 64 J.K.B.A. at 24.

Moreover, in *McCubbin v. Walker,* 256 Kan. 276, 886 P.2d 790 (1994), decided just 5 months after *Dillard,* our Supreme Court also hinted that it might be inclined to broadly interpret and expand its holding in *Dillard.* The *McCubbin* court first concluded that the tree trimming activity that led to the plaintiff's injury under the facts of that case did not, as a matter of law, constitute an inherently dangerous activity. 256 Kan. at 297. The court further noted:

"In our recent case of *Dillard v. Strecker,* 255 Kan. 704, 877 P.2d 371 (1994), we held that the inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation. [Landowner] urges us to expand our holding in *Dillard* to exclude the exception in all instances involving independent contractors and their employees. While the arguments in favor of doing so may have considerable merit, we do not deem it necessary or appropriate to consider expanding the holding of *Dillard* in this case. That issue is better left for another day when it may be directly determinative of the case then before the court." *McCubbin,* 256 Kan. at 297.

In analyzing the *McCubbin* decision, Professors Westerbeke and McAllister noted that *Dillard* did not explicitly explain what role workers compensation played in characterizing the relationship between the landowner and the contractor's employee for the purpose of defining the landowner's duty:

"If the real reason for the holding in *Dillard* was to thwart attempted circumvention of workers' compensation in order to get a common law recovery, the holding should be so phrased. Otherwise, as may have been the case in *McCubbin,* un-

protected workers will be automatically excluded in cases without any opportunity to determine whether a claim against the employer of the independent contractor might be appropriate." Westerbeke & McAllister, *Survey of Kansas Tort Law: Part I,* 49 Kan. L. Rev. at 1097.

On the other hand, our Kansas federal district court has specifically limited *Dillard* to its facts. See *Martin v. MAPCO Ammonia Pipeline, Inc.,* 1994 WL 409591 (D. Kan. 1994) (unpublished opinion). Granted, *Martin* is not binding on this court and is factually distinguishable from this case. See *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 669, 941 P.2d 1321 (1997) ("Federal court decisions on issues of state law are not binding on and have limited precedential effect in state courts."). Nevertheless, we may draw guidance from *Martin* because it dealt with a landowner's liability for a work-related injury to an employee of an independent contractor even though the employee was covered by workers compensation.

In *Martin,* one person was seriously injured and another person killed during the course and scope of their employment with an independent contractor charged with maintaining an ammonia pipeline. The plaintiffs were covered by workers compensation. Plaintiffs sued the owner of the pipeline on theories of negligence, negligence involving a dangerous instrumentality, absolute liability based on ultrahazardous activity, and strict liability in tort. The owner of the pipeline sought summary judgment, arguing that as the owner of the pipeline, it could not be held liable under any theory for injuries to the independent contractor's employees under the rule announced in *Dillard.* In distinguishing *Dillard,* the *Martin* court stated:

"The *Dillard* Court . . . clearly did not contemplate extending tort immunity to every party in a contractor-subcontractor line when workers compensation coverage is available. Yet that would be the effect if liability were based solely on the policy reasons stated [in the case]. Instead, the *Dillard* Court restricted its holding to the facts of the case and the theories of liability discussed in the opinion.

. . . .

". . . [Those theories of liability] were both based on exceptions to the rule that the employer of an independent contractor is not liable for the negligence of the contractor or his employees. *See* Restatement (Second) of Torts, § 409 (1964). One of the claims alleged that defendant breached a nondelegable duty, and the

court noted a blurring between 'direct' and 'vicarious' liability. See *Dillard*, [255 Kan. at 710, 715]. *Still, the claims asserted were based on the negligence by the independent contractor.* In addition, two of the cases relied on by the *Dillard* Court specifically found that an owner employing an independent contractor could still be liable for its own negligence. *See Tauscher*, . . . 635 P.2d [at] 430 . . . ; *Stockwell*, . . . 733 P.2d [at] 1032." (Emphasis added.) *Martin*, 1994 WL 409591, at *7.

Moreover, in adopting the *Martin* rationale, our Kansas federal district court in *Cuiksa v. Hallmark Hall of Fame Productions, Inc.*, 252 F. Supp. 2d 1166, 1175 (D. Kan. 2003), stated:

"Given this limitation by the [*Dillard*] court, and the interpretation of that limitation by this court, the rule announced in *Dillard* does not extend to the facts and claims of this case. . . . The theories propounded in *Dillard* are based on the negligence of the contractor or sub-contractor and seek to impose liability vicariously, through exceptions to the workers' compensation bar. D & D is the subcontractor and general employer of plaintiff in the case at hand. Plaintiff's claims involve the negligence of McGee [alleged special employer], not that of D & D. *Dillard* does not shield a defendant from his own negligence and cases cited in the *Dillard* decision confirm the court's decision to limit the holding to claims regarding the negligence of the sub-contractor."

Although the plaintiff's injuries were covered by workers compensation, the *Cuiksa* court found no merit in the alleged special employer's argument that the rule under *Dillard* barred the plaintiff's tort action. *Cf. Mullins v. Tyson Foods, Inc.*, 143 F.3d 1153, 1156-57 (8th Cir. 1998) (The court similarly concluded that the seemingly broad test for premises liability announced in *Matteuzzi*—as relied upon by *Dillard*, 255 Kan. at 713—did not apply to *any and all* tort claims of employees of independent contractors who are covered by workers compensation insurance. An independent contractor's employee could proceed on negligence claim against landowner for injuries suffered when he slipped and fell while away from the job site but on the premises because the independent contractor did not have control over the area where the employee was injured.).

Here, Herrell's negligence claims against National Beef are not tied to an independent contractor's negligence. Rather, she seeks to recover from National Beef for its own negligence in creating,

maintaining, or failing to warn of a dangerous condition. Restatement (Second) of Torts § 343.

We are guided in our inquiry by several previous cases that have considered whether landowners may, in certain circumstances, owe a duty to employees of independent contractors who are injured while working on their property. Most significantly, in *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 377 (Mo. App. 1996), *rehearing and/or transfer denied, application to transfer denied* (1997), the Missouri appellate court concluded that the policy reasons underlying the Missouri Supreme Court's decisions in *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. 1991); and *Matteuzzi v. The Columbus Partnership, L.P.*, 866 S.W.2d 128 (Mo. 1993) (as relied upon in *Dillard*) also precluded a plaintiff from recovering from the landowner under the more basic and general premises liability principles governing a landowner's liability for injuries to invitees set out in Restatement (Second) of Torts § 343. 937 S.W.2d at 377-78.

Plaintiff argued that to allow the landowner to escape liability for failure to either correct or warn about a dangerous property condition arising as a result of the landowner's own negligence "would be bad public policy, for it would encourage employers not to warn independent contractors about latent dangers on their property." 937 S.W.2d at 378. The *Gillespie* court acknowledged that this was a valid policy concern. Nonetheless, the *Gillespie* court concluded that the plaintiff could not proceed on the dangerous condition theory of landowner liability because in *Matteuzzi*, the Missouri Supreme Court had

"necessarily balanced the type of policy concerns now raised with the policies weighing against imposition of liability. It determined that the latter policies— including the fact that the employee would be eligible for workers compensation benefits and that the cost of such benefits was necessarily figured in the fee charged by the independent contractor—outweighed other factors which might favor imposition of liability in cases of direct negligence." *Gillespie*, 937 S.W.2d at 378.

The *Gillespie* court could not distinguish between the landowner's alleged negligence in failing to warn about or correct the dangerous condition alleged to have caused the plaintiff's injuries

from the allegations of the landowner's direct negligence for latent dangers that the Missouri court had found were not actionable in other cases. 937 S.W.2d at 378. The *Gillespie* court found that the only way to reconcile the principles articulated in *Zueck* and other cases cited was to hold that those cases "have carved out exceptions to Section 343's rule governing premises liability to invitees." 937 S.W.2d at 379. The court then suggested that those exceptions will bar finding a landowner directly liable for injuries to an employee of an independent contractor covered by workers compensation unless the landowner's conduct rises "to the level of 'controlling the physical activities' of [the injured employee's] work or 'the details of the manner in which the work was done.' [Citation omitted.]" 937 S.W.2d at 379. The *Gillespie* court grounded its conclusion in the lack of sufficient control by the landowner in that case. Consequently, the court determined that the landowner could not be held liable for the employee's injuries. 937 S.W.2d at 379.

Accordingly, the distinguishing factor in Missouri for holding a landowner liable for its own negligence to an employee of an independent contractor covered by workers compensation is the degree of control the landowner retains over the details of the work being performed by the employee. Consequently, in Missouri, a landowner may be held directly liable for injuries sustained by an employee of an independent contractor covered by workers compensation if the landowner retains a degree of control that " 'go[es] beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractor or the details of the manner in which the work is done.' [Citation omitted.]" *Gillespie*, 937 S.W.2d at 377; see also *Sutherland v. Barton*, 570 N.W.2d 1, 5-6 (Minn. 1997) (recognizing the Minnesota Supreme Court was willing to hold a company liable for injuries to an independent contractor's employees only in the limited circumstances where the company retains detailed control over a project and then fails to exercise reasonably careful supervision over the project); *James v. Union Elec. Co.*, 978 S.W.2d 372, 376 (Mo. App. 1998) ("[T]he dichotomy between inherently dangerous activity and non-inherently dangerous activity [has been] abolished. The focus for imposing liability on

dangerous activities now revolves around the landowner's substantial control of 'the physical activities of the employees' or 'the details of the manner in which the work is done.' [Citation omitted.]"); *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029, 1031-32 (Wyo. 1987) (owner can be directly liable to employee for owner's own negligence if the owner maintains control over the work and exercises that control negligently).

The Missouri appellate court also engaged the question of a landowner's duty to an employee of an independent contractor in *Callahan v. Alumax Foils, Inc.*, 973 S.W.2d 488, 491 (Mo. App. 1998), *motion for rehearing and/or transfer denied* (1998), which involved a question of whether the landowner controlled the plant where the employee was injured. In *Callahan*, the plaintiff employee made several arguments. The plaintiff employee, in one argument, maintained that even if the control test was proper in his case, there was a genuine issue of fact as to whether the defendant landowner had retained control over the entire plant with the exception of the room in which he was working. The employee's argument was very similar to the trial court's determination in this case that a question existed whether National Beef had breached its duty to Herrell because it had continued to operate the rendering plant. In rejecting the employee's argument, the *Callahan* court stated: "[U]nder Missouri's version of the control test, the plaintiff must show that the landowner was controlling both the jobsite and the activities of the contractor. [Citation omitted.]" 973 S.W.2d at 491. In reaching its conclusion, the *Callahan* court stated that it had relied on the holding in *Lawrence v. Bainbridge Apartments*, 919 S.W.2d 566, 570 (Mo. App. 1996), that to meet the control test, the landowner must have control over the contractor's activities. In *Lawrence*, the defendant landowner had retained complete possession of its apartment complex while the plaintiff employee was washing the windows of the complex under a contract between the defendant landowner and the plaintiff's employer. In rejecting the employee's claim, the *Lawrence* court stated that because the defendant landowner did not have control over the contractor's activities, the employee did not meet the control test. 919 S.W.2d at 570.

Given our Supreme Court's reliance on Missouri precedent (*Zueck* and *Matteuzzi*) in formulating the policy reasons behind its limited holding in *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), it is reasonable to conclude that those policies would apply to bar a cause of action against a landowner under Restatement (Second) of Torts § 343, except in cases where the landowner exerts sufficient control over the details of the work. See also *Jordan v. NUCOR Corp*, 295 F.3d 828, 836 (8th Cir. 2002) (The court determined that the owner of the construction site did not retain sufficient control over the independent contractor's performance to impose liability.). Here, the evidence does not show that National Beef exerted such control over the details of the construction project and the contractor's activities that tort liability should be imposed on it; *Hooper v. Pizzagalli Construction Co.*, 112 N.C. App. 400, 436 S.E.2d 145 (1993) (The North Carolina appellate courts have found that where an independent contractor is "free to perform its job according to its own independent skills, knowledge, training, and experience," liability under a retained control theory will not attach to the general contractor or landowner.).

By contrast, Pennsylvania appellate courts have taken a seemingly different approach to a claim of landowner negligence for dangerous conditions under § 343 of the Restatement. In *Farabaugh v. Pennsylvania Turnpike Com'n*, 590 Pa. 46, 61, 911 A.2d 1264 (2006), the Supreme Court of Pennsylvania explained:

> "The courts of this Commonwealth have spoken to the duty possessors of land have toward the employees of contractors. In cases where a possessor of land employs an independent contractor, this Court has concluded that a possessor of land must use 'reasonable care to make the premises safe or give adequate and timely warning of dangers known to him but unknown to the contractor or his employees.' [Citations omitted.] 'However, the possessor of the land can insulate himself from liability by warning the contractor of the existence of any dangerous conditions on the premises which he knows or should know, and need not warn the contractor's employees.' [Citation omitted.] Moreover, a possessor will not be held responsible for defective conditions of the land if they are the product of the independent contractor's work. [Citation omitted.]"

The Pennsylvania courts also follow the general rule that "landowners employing independent contractors are exempt from liability for injuries to an independent contractor's employees absent

an exercise of control over the means and methods of the contractor's work." 590 Pa. at 61-62. Nevertheless, rather than relying on general claims for landowner liability under Restatement § 343 as the court did in *Gillespie*, the Pennsylvania appellate court's analysis involves landowner liability for retained control over the work under Restatement (Second) of Torts § 414. *Farabaugh*, 590 Pa. at 61-62. The Pennsylvania appellate court noted that two distinct duties are at play in those sections of the Restatement. On the one hand, the landowner's duty under § 343 involves the general duty of a possessor of land to business invitees, including employees of independent contractors. On the other hand, § 414 provides for liability for landowners' own negligence where they retain active control over the means and methods of contractors' work and job site: an exception to the general rule of nonliability. 590 Pa. at 64-65.

In addition, Pennsylvania courts apparently allow an employee of an independent contractor to sue the landower under the inherently dangerous activity or "peculiar risk" doctrine, which *Dillard* explicitly rejected. See *Farabaugh*, 590 Pa. at 66-67.

Even under the approach of the Pennsylvania appellate courts, it is apparent that National Beef would be found to be insulated from liability under Restatement § 343 because there seems to be sufficient evidence that National Beef warned the general contractor of the existence of any dangerous conditions on the premises. J-A-G did not dispute that it was acutely aware of the rendering covering the floor, which was an everyday consequence of operating the facility, and J-A-G was obviously aware of the holes. Because the general contractor was aware of the conditions of the premises, there was no duty on National Beef's part to warn the subcontractor's employees, such as Herrell. Thus, there is no support in the record for imposing liability under Restatement § 343. Moreover, there is no support for imposing liability under Restatement § 414 because National Beef had retained no control or direction over the work resulting in the injury.

There are two reasons for denying landowner liability to a contractor's employee even in a case like the present one: where the landowner retains possession of the premises and continues its

business activities while the contractor is completing its project with the help of independent contractors. First, a general contractor on a roofing project would normally control a project's activities and also the safety measures taken during the project. During this particular project, J-A-G was aware that National Beef continued to operate its rendering facility during the project. Moreover, during National Beef's rendering operations, cow intestines, blood, and other nonconsumable meat products were known to spill onto and cover the floor of the plant. As part of the roofing project, large holes were excavated in the rendering plant's existing floor for concrete pillars to support the roof. Despite the fact that J-A-G was aware that National Beef continued its rendering operations during the roofing project, J-A-G neglected to take safety measures to mark or cover the hole into which Herrell later fell. If National Beef had been controlling J-A-G's activities on the project and had directed the safety measures that J-A-G needed to take, then National Beef would have been responsible for posting warnings about the holes, and liability for Herrell's injuries would have attached to National Beef. Nevertheless, because the record is devoid of any evidence that National Beef exerted sufficient control over the details of the construction project and the contractor's activities, National Beef is not liable in tort to Herrell.

Second, leading to our Supreme Court's holding in *Dillard,* our Supreme Court reasoned that workers compensation statutes shield independent contractors who pay workers compensation insurance premiums from further tort liability for work-related injuries to their employees. Moreover, the court reasoned that landowners who employ independent contractors and who indirectly pay the cost of such insurance coverage should be similarly shielded from claims of contractors' employees that occur from the contract work. Nevertheless, under the dissent's reasoning, landowners who employ independent contractors would be exposed to a greater cost than if they had used their own employees to perform the work. This result would be unfair under the facts of this case. As a result, we determine that the policy reasons advanced in *Dillard* would bar the claims brought by Herrell.

Reversed and remanded to the trial court with directions to enter judgment in favor of National Beef.

MCANANY, J., concurring in part and dissenting in part: I concur that under *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), we are required to set aside the judgment against National Beef Packing Company (National Beef). However, I respectfully dissent from the majority's holding that *Dillard*, as expanded by the majority, controls with respect to all of Herrell's claims. I would remand the case for retrial excluding Herrell's claim that National Beef violated the Occupational Safety and Health Administration (OSHA) regulation regarding barricading or otherwise guarding the hole where Herrell fell.

A brief recap of the facts is in order. National Beef decided to erect a new roof at its rendering plant. National Beef hired J-A-G Construction, Inc., (J-A-G) to do the work. The work involved drilling holes in the floor of the plant to install columns to support the new roof structure. Once the holes were drilled, J-A-G hired the engineering firm Terracon Consultants, Inc., (Terracon) to sample and test the soil in the holes before installing the columns. Terracon sent its employee, Shelly Herrell, to obtain soil samples for testing. In the meantime, National Beef continued its rendering operation at the plant, resulting in the plant's concrete floor being covered with animal blood and entrails when Herrell arrived. This offal filled a hole in the concrete and hid its presence from Herrell. Herrell stepped into the unguarded hole and sustained the personal injuries that prompted this suit. It is unclear from the record whether the hole Herrell stepped in was one of the holes drilled for the roof columns. In any event, it was not the hole she was going to in order to obtain soil samples for testing.

Herrell pursued a workers compensation claim against her employer, Terracon, and ultimately received benefits of $54,439.45, for which Terracon and its insurance carrier claimed a lien. Herrell then sued National Beef in tort.

At trial the jury was instructed that Herrell claimed National Beef was negligent (1) in creating an unreasonably dangerous condition by allowing rendering to fill and cover the hole in the floor;

(2) in not removing the rendering so as to make the hole visible; (3) in failing to warn about the presence of the hidden hole; and (4) in various iterations of these claims. Herrell also claimed National Beef violated an OSHA regulation that required it to either cover the hole or provide a railing around it to prevent someone from accidentally stepping into it. Herrell made no claim that National Beef was vicariously liable for any conduct of Terracon or J-A-G. Further, the jury was not instructed that Herrell was engaged in an inherently dangerous activity at the time of the accident; nor was the jury asked to determine whether Herrell's activities were inherently dangerous, the trial procedure authorized in *McCubbin v. Walker*, 256 Kan. 276, 290, 886 P.2d 790 (1994) (citing *Falls v. Scott*, 249 Kan. 54, 59-62, 815 P.2d 1104 [1991]).

The jury awarded Herrell damages of $119,318.98. After satisfying the lien for workers compensation benefits, her net jury award was $64,879.53.

National Beef argues on appeal, and the majority agrees, that *Dillard* controls and bars all of Herrell's claims. The majority does so by extrapolating from cases from other jurisdictions cited in *Dillard* to reach the conclusion that *Dillard* applies to *all* negligence claims brought by a contractor's injured employee against the landowner when the injured employee is entitled to workers compensation benefits.

In announcing its decision in *Dillard* the Supreme Court explicitly warned: "Our decision is limited to the facts herein and to those instances where the injured employee or an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion." 255 Kan. at 727. I do not believe we should take that caveat lightly. Further, K.S.A. 44-504(a) is clear and unambiguous. It provides:

"When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person."

Immunizing National Beef from tort liability for Herrell's injuries ignores the plain language of the statute.

Turning to the facts in *Dillard*, Archbishop Strecker had engaged a general contractor to construct a new Catholic church and school. The general contractor contracted with P&S Masonry, Inc., to do masonry work on the project. Dillard was employed by P&S Masonry, Inc. Dillard was injured when a masonry wall being constructed on the job site collapsed. Dillard contended the Archbishop, as landowner, was negligent in failing to retain a special inspector to inspect the wall as required by the local building code. Dillard also claimed the Archbishop was vicariously liable for the negligence of the masonry contractor who constructed the wall since its construction was an inherently dangerous activity. Because the case was appealed following the entry of summary judgment in favor of the Archbishop, the Supreme Court assumed as true that the Archbishop had a nondelegable duty to provide a special inspector for the wall and that construction of the wall was an inherently dangerous activity.

In granting summary judgment the district court relied on *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 (Mo. 1991); *Parker v. Neighborhood Theatres*, 76 Md. App. 590, 547 A.2d 1080 (1988); and *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988). On appeal, the Supreme Court discussed each of these opinions. *Zueck* involved a claim that the landowner was vicariously liable for the negligent acts of the contractor when Zueck was injured in a fall while engaged in an inherently dangerous activity. Herrell, the plaintiff in the action now before us, makes no such claim. In *Parker* the Maryland court held that "vicarious liability of the owner may not be predicated upon a statutory non-delegable duty where the injuries to an employee of a contractor arise solely from the negligence of the contractor in failing to maintain a reasonably safe work place." 76 Md. App. at 597. Herrell makes no claim of vicarious liability for the negligence of the contractor. *Ray* also was predicated upon the landowner's vicarious liability for the negligence of the contractor. Here, Herrell directs her ire not at the contractor but rather at National Beef for covering up the hole with offal so as to create a snare for the unwary.

In tracing the history of *Zueck*, our Supreme Court described the Missouri Supreme Court's holding in *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128 (Mo. 1993), which expanded the holding in *Zueck* with respect to claims not before the court in *Dillard*. Given the cautionary language at the end of *Dillard*, I am reluctant to rely upon the Supreme Court's dicta relating to *Matteuzzi* in order to unnecessarily expand the court's ruling in *Dillard*.

The majority concludes without analysis that

"[I]f just the policy reasons set out in *Dillard* are considered, National Beef's position would be correct. The policy considerations support a conclusion that an employee of an independent contractor covered by workers compensation insurance cannot recover in negligence from the landowner, regardless of the employee's underlying theory of the landowner's liability." Slip op. at 19.

To the contrary, it seems to me that the various policy considerations enumerated by the Supreme Court in *Dillard* to support non-liability of the landowner do not apply to the facts now before us and do not support further expansion of the holding in *Dillard*. Here are the nine policy considerations stated in *Dillard*, 255 Kan. at 725-26:

1. *"The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee."*

In *Dillard*, the ultimate cause of the accident and of Dillard's injuries was the contractor's negligent construction of the wall that collapsed. Under those facts, why should the Archbishop bear greater responsibility than the neglectful contractor whose exposure is limited under our workers compensation laws? But here, Herrell made no claim that the contractor was negligent. Open and obvious holes are to be expected at a construction site. Traps created by the landowner in covering those holes are not.

Further, in *Dillard* the defect in the premises that caused injury was the negligently constructed wall *at* the job site. Here, Herrell was on her way *to* the job site, *i.e.*, the hole where she intended to obtain soil samples, when she fell into a different hole. Unlike in *Dillard*, the defect in the landowner's premises was not at the site where the injured worker was doing her work. It was at a point en

route to the place where she planned on working. Herrell's claim was that National Beef made latent a defect that otherwise would have been open and obvious. It seems to me that under these circumstances ordinary premises tort liability should control.

I will discuss further this notion of the landowner's liability in connection with policy statement No. 9. But in the meantime, I note that the landowner's liability is "greater" only in the sense that exposure to damages is not limited to benefits enumerated in our workers compensation laws. However, the landowner has the compensating factor of being able to confront the injured worker with his or her own negligence, a defense unavailable to the employer of the injured worker. That is the fundamental trade-off between our common-law tort system and our workers compensation statutes. So the notion that the landowner's liability is greater is debatable.

It seems to me that unlike in *Dillard*, this policy consideration should not apply to Herrell's claim.

2. *"The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees."*

This notion seems reasonable on its face. But suppose a worker goes to work for a landowner who is engaged in a business that generates a higher than normal rate of injuries. The increased exposure to the risk of injury is a fact that becomes readily apparent as the worker continues on the job and chooses to do so. While an individual worker's decisions may be driven by many factors, we must presume from basic economic principles that the decision to continue in the job is an economic decision made after factoring in the known increased likelihood of injury and the employee's rate of compensation.

Now, also suppose another worker goes to work for a different employer in a different industry where, because of the nature of the work or the conditions of the workplace, the risk of injury is substantially less. That employer then is hired as an independent contractor to perform work on the landowner's premises. The contractor sends its worker to perform the contracted work. Unlike

for the landowner's direct employees, the risk of working on the landowner's property may not have been factored into the compensation of the contractor's employee, nor may the contractor's employee have been aware of the risks associated with working on the landowner's premises. In this situation, why should the landowner not be exposed to greater liability than the contractor for a worker's injury on the landowner's property due to a latent defect in the property created by the landowner?

Thus, it seems to me that this policy statement expressed by the court does not have universal application and cannot be used to bar Harrell's claim absent some specific facts in the record to support its use.

3. *"Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor."*

There is nothing in the facts before us to suggest that this concern could be realized in this case. Assuming that soil sampling and testing is a highly technical endeavor, I find it not only unlikely but pure speculation to conclude that National Beef would engage in this activity itself to immunize itself from claims of nonemployees.

4. *"Employees of an independent contractor, and their dependents, are protected under the provision of the workers compensation statutes."*

If this were dispositive, there would be no justification for any independent actions against third-party tortfeasors by an injured worker and K.S.A. 44-504(a) would be meaningless.

5. *"Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly."*

As noted earlier, I believe this statement is entirely correct. But why does it apply to Herrell? I suggest that it clearly does not since there is no claim that Herrell was engaged in an inherently dangerous activity, or that Herrell, a visitor to the premises and not an ongoing employee working there, was aware of the danger of defects in the premises made latent by the landowner's conduct.

6. *"Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and the methods of avoiding such risks that an independent contractor engaged in such activity possesses."*

Again, there was nothing inherently dangerous about the work of collecting and testing soil samples. There is no concern that National Beef would conduct its own soil sampling and testing and thereby expose its own employees to an inherently dangerous activity. Had National Beef used its own employees, it would not have exposed them to an inherently dangerous activity in taking soil samples from a hole. The danger arose from National Beef's conduct in camouflaging a different hole that was in the path that led to Herrell's work site. Thus, when it comes to knowledge of the risks associated with the work, under the facts now before us that knowledge rested with National Beef, not Herrell or her employer, Terracon.

Various holes in the concrete floor of the rendering plant were marked with sandbags and were easily visible. The hole into which Herrell fell was not so marked but was hidden by the viscera that filled it and the surrounding area. National Beef, rather than Herrell or Terracon, was in the best position to assess the risk and take reasonable measures to avoid it. As stated in *Zueck* which the majority relies on, 41 Kan. App. 2d at 319, the Missouri Supreme Court observed that in situations such as the one before us today in which the work itself is not inherently dangerous,

"common sense permits a landowner to identify the potential of harm which an activity may create to persons not participating in the activity. Having identified the risks, a responsible landowner may undertake the steps necessary to protect third parties from that harm. The need to deny access to a facility, erect protective barricades around excavations, construct protective overheads where work aloft is anticipated, and a myriad of obviously needed and easily fabricated devices are relatively easy to anticipate and provide. [Citations omitted.]" 809 S.W.2d at 387.

If this rationale from *Dillard* were to apply to the facts now before us, it would support extending liability to National Beef rather than shielding it from liability.

7. *"Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work."*

This is simply a restatement of policy statement No. 2, and the same comments apply here.

8. *"To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous doctrine would (a) reward landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury."*

Again, Herrell does not rely on the inherently dangerous doctrine. This doctrine creates a path to establish liability on the part of a landowner who engages a negligent contractor to perform inherently dangerous work. Herrell makes no claim that the contractor was negligent. Further, there is nothing to suggest that National Beef would have undertaken its own soil sampling and testing to avoid tort liability.

9. *"A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor."*

This is an oft-repeated but unexamined rationale for rejecting a landowner's tort liability. See, *e.g., Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1218 (8th Cir. 1979); *Eutsler v. United States*, 376 F.2d 634, 636 (10th Cir. 1967); *Sloan v. Atlantic Richfield Company*, 552 P.2d 157, 160-161 (Alaska 1976); *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky. App. 1973); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash. 2d 274, 635 P.2d 426 (1981). These are all cases cited in *Dillard*. This rationale seems to have originated in language in a tentative draft of the Restatement (Second) of Torts, which was never included in the final draft. See *Eutsler*, 376 F.2d at 636.

This rationale is closely linked to the proposition that a landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees. In hiring an independent contractor to do the work, the landowner avoids paying its own employees and substitutes the contractor's employees to accomplish the task. In doing so, the landowner pays for the work based on the wages paid by the contractor to its employees plus a factor for overhead and profit.

Under this analysis the payment the landowner makes to the independent contractor includes the cost of workers compensation coverage for the contractor's employee. In other words, the contractor passes this expense through to the landowner in the bill for the contracted services. Thus, if the contractor's employee is injured while working on the landowner's premises, this rationale notes that the landowner already has indirectly paid for the workers compensation benefits received by the contractor's injured employee. While this rationale seems to make sense in the abstract, is there a legitimate basis to support applying it in this case?

First, Herrell was injured while en route to the site where she was to collect soil samples for analysis. She was unable to collect the soil samples after her injury. The work was done later by a coworker. We can infer that National Beef paid Terracon indirectly for the soil sampling and testing, but not for any work performed by Herrell. Thus, National Beef's shield against tort liability is predicated on work performed by someone other than the person against whom that shield is now raised.

Second, we should take into account the fact that different industries have different workers compensation loss experiences. To the extent workers compensation premiums are underwritten based upon these differences, we can expect employers in different industries to pay different rates for workers compensation coverage. Workers compensation costs for a worker who spends all of his or her time in one work environment, such as an employee of National Beef, probably will be different than the cost for a worker employed by a consultant, such as Terracon, whose employees do their work in a variety of work environments with varying exposures

to potential injuries. Today Herrell may be sent to a rendering plant to do soil tests. Tomorrow she may be at a library or out in an open, undeveloped field doing geotechnical consulting work. The following day she may be in an office laboratory doing analyses of her samples. The overall risk of a job-related accident to an employee such as Herrell could very well be less than the risk exposure for an employee working full-time in a rendering plant. Thus, the work done by Herrell, whose workers compensation cost to her employer would have passed through to National Beef, could very well have been less than the cost to National Beef if it had not contracted out the work.

We expect profit maximizers to seek to minimize production costs. When this is accomplished by contracting out work in a manner that fails to account for the true risk associated with the producer's business, the producer is rewarded with a lower production cost and a higher profit. Why is this increased profit not enough?

When the employee of a contractor is injured at the producer's facility due to the producer's negligence, should the producer have the added reward of being shielded by the contractor's workers compensation coverage? That coverage makes workers compensation the exclusive remedy for the injured worker vis-a-vis the employer. Here, the producer is *not* the employer. The producer may already have enjoyed the benefit of the reduced cost of Herrell's work. It has not been demonstrated so far that society gains by extending to the producer the workers compensation shield against tort liability.

Application of this last policy rationale in *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), creates the possibility for National Beef to enjoy the protection of the exclusive remedy provision of our workers compensation laws while indirectly paying a premium that does not reflect the risk the worker is exposed to in National Beef's plant. When this occurs a cost more properly attributed to National Beef's product is shifted to and becomes part of the cost of Terracon's services to its customers. It seems to me that if this occurs, there is a distortion in the marketplace that at least in some small way undermines market efficiency.

When a landowner contracts out work under these circumstances, the potential for harm in performing the work does not change. What changes is the potential liability of the landowner who has control over the nature and extent of the risks the contractor's workers will confront on the landowner's premises. When the landowner is allowed to use the contractor's workers compensation coverage as a shield, the market becomes less efficient because the price of the product does not reflect its actual cost. This seems to me to create a rather perverse incentive the law should discourage rather than encourage in instances in which the risk of injury arises from controllable conditions on the landowner's premises. With regard to controllable conditions on the landowner's premises, the court in *Zueck* observed:

"Tort law is 'concerned with the allocation of losses arising out of human activities . . . . "The purpose of the law of torts is to adjust these losses, and to afford compensation for injuries sustained by one person as a result of the [negligent] conduct of another." ' [Citation omitted.] To achieve this objective, courts and legislatures have established rules of liability. These rules ought to function to promote care and punish neglect by placing the burden of their breach on the person who can best avoid the harm. When a rule of tort liability encourages a result contrary to these policy goals, it ought to be abandoned." 809 S.W.2d at 388.

As a final point on *Dillard* rationale No. 9, it seems to me that if this workers compensation cost-shifting notion is permitted between landowner and contractor, why not also between the landowner and other contracting parties? If, for example, a wholesale animal food supplier buys rendering products directly from National Beef and sends its truck to National Beef's rendering plant to take delivery and in the process runs over Herrell in National Beef's parking lot, should not National Beef's customer also have the protection of the tort-liability shield under our workers compensation law? After all, if the cost of Herrell's workers compensation coverage passed through to National Beef when Terracon provided the employee to do the soil testing, that same cost was again passed through to National Beef's customer in the price of its products.

For all these reasons, I believe this last policy consideration stated in *Dillard* should not apply to Herrell.

The *Dillard* court concluded that "[a] landowner is not liable to an employee of an independent contractor covered by workers compensation for injuries sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance." 255 Kan. 704, Syl. ¶ 3. Herrell claimed, among other things, that National Beef violated OSHA regulations in not placing an appropriate barrier around the hole where Herrell fell. This claim comes within the clear prohibition of *Dillard*. However, the jury returned a general verdict on the issue of liability, not distinguishing between Herrell's various claims. Since I would read *Dillard* narrowly rather than broadly, and since I would not extrapolate the ruling in *Dillard* to facts and claims not at issue there, I would set aside the judgment against National Beef but remand the case for retrial on Herrell's remaining issues. See *Franklin v. Northwest Drilling Co., Inc.*, 215 Kan. 304, 315, 524 P.2d 1194 (1974).