No. 99,451

SHELLY K. HERRELL, *Appellee*, v. NATIONAL BEEF PACKING COMPANY, LLC, *Appellant*, and TERRACON CONSULTANTS, INC., and LIBERTY MUTUAL FIRE INSURANCE COMPANY, *Appellees*.

(259 P.3d 663)

Opin-
ion filed August 12, 2011.

*Aaron L. Kite*, of Rebein Bangerter, P.A., of Dodge City, argued the cause, and *David J. Rebein*, of the same firm, was with him on the brief for appellant.

*Matthew L. Bretz*, of Bretz Law Offices, of Hutchinson, argued the cause, and *Mitchell W. Rice*, of the same firm, was with him on the briefs for appellee, Shelly K. Herrell.

The opinion of the court was delivered by

BEIER, J.: This is a premises liability case with a twist. Plaintiff Shelly K. Herrell successfully sued defendant National Beef Packing Co., LLC (National Beef) to recover for a knee injury she suffered while working in its Dodge City beef-packing plant. National

Beef appeals, arguing that Herrell's status as an employee of an independent contractor, Terracon Consultants, Inc. (Terracon), and her receipt of workers compensation meant that it did not owe her the landowner's usual duty of reasonable care.

The district judge denied National Beef's pretrial motion for summary judgment and mid-trial motion for judgment as a matter of law on the duty issue. A panel of our Court of Appeals reversed and remanded. *Herrell v. National Beef Packing Co.*, 41 Kan. App. 2d 302, 304, 202 P.3d 691 (2009). A majority of the panel remanded only for entry of judgment as a matter of law in favor of National Beef, relying on *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), and held that Herrell's remedy was limited to workers compensation because National Beef did not maintain substantial control over her employer's activities on the premises. In a concurring and dissenting opinion, Court of Appeals Judge Patrick D. McAnany rejected the application of *Dillard* to most of Herrell's claims. He would have remanded for retrial on all but one claim dependent upon National Beef's alleged noncompliance with an Occupational Safety and Health Administration (OSHA) regulation.

## FACTUAL AND PROCEDURAL BACKGROUND

National Beef's beef-packing plant in Dodge City slaughters approximately 4,000 head of cattle a day. This understandably messy endeavor at times causes nonconsumable rendering, that is, bovine blood and guts, to spill onto the floor of the plant. National Beef employees are generally responsible for cleanup of such spills.

At the time of Herrell's injury, National Beef had contracted with J-A-G Construction Company (J-A-G) to build a new roof on its rendering building. National Beef chose to continue its plant's normal operations during the construction, and J-A-G was aware of that choice and of the conditions in the building. The construction of the new roof required holes to be drilled in the building's floor for placement of support footings. In turn, placement of the footings required testing of the underlying soil. J-A-G hired Herrell's employer, Terracon, to conduct the necessary soil tests.

Herrell was one of two Terracon employees who came to the plant to perform the soil tests. She and her fellow employee checked in at National Beef's guard station, where they were met by a J-A-G onsite foreman who showed them where the holes to be tested were located. After the J-A-G foreman left, Herrell and her fellow employee retrieved equipment from their vehicle and then began walking to the soil-testing site. Once back inside the plant, Herrell stepped off a ledge and into a hole, resulting in an injury to her knee. She and her coworker testified that the hole was covered by rendering and thus not visible. After the accident, when Herrell's fellow employee returned to the area, the rendering covering the hole had been cleared away, and he saw a grate in a nearby corner and tape on a column close to the hole. By the time this lawsuit began, well after the construction project was complete, no witness could determine exactly where the hole would have been or who had dug it or exposed it.

Because of her knee injury, Herrell was unable to continue her employment at Terracon. She received workers compensation for her injury.

### District Court Proceedings

Herrell also filed this lawsuit against National Beef, alleging that National Beef "was negligent in maintaining a dangerous condition; in failing to warn of a dangerous condition; and in other respects."

National Beef moved for summary judgment pretrial. It initially argued that Herrell could not meet her burden to demonstrate that National Beef had knowledge of the hole or, even if it did, that it had control over the area in which the hole was located. Herrell's response argued that National Beef not only had notice and knowledge of the hole but also created the dangerous condition by operating during construction and allowing rendering to cover it; she also argued that National Beef controlled the area where the injury occurred. In its reply, National Beef argued for the first time that it owed no landowner duty to Herrell because of public policy considerations recited in the *Dillard* case. National Beef also filed an amended pretrial questionnaire to incorporate this new argument.

The district judge denied National Beef's motion for summary judgment, stating that he had reviewed *Dillard* "extensively." He emphasized that *Dillard* recognized the right of an injured employee to bring an action against a negligent third party, see K.S.A. 44-504(a), and wrote:

"In this instance, defendant was continuing its normal working operations while a construction project was under way. Had defendant vacated the premises and allowed J.A.G. and its subcontractors exclusive access to and possession of the area under construction, their motion would be well founded.

"However, the facts indicate to this Court that the rendering products that may have filled and obscured the hole that Plaintiff stepped into were there because of the actions of Defendant National Beef. It appears there are comparative fault issues that cannot be determined through a Motion for Summary Judgment."

Also, pretrial, National Beef filed an unsuccessful motion in limine to exclude Herrell's evidence regarding the existence and content of a federal OSHA regulation pertaining to safety precautions regarding holes in workplace floors. National Beef renewed its objection to this evidence at trial and was, again, unsuccessful. After argument by the parties at the instructions conference, the district judge also decided to include a mention of the OSHA regulation in the jury instruction detailing Herrell's contentions. The instruction listing the several ways in which Herrell alleged that National Beef was at fault included language characterizing the OSHA regulation as the industry standard. Herrell was not permitted to state that National Beef had violated the regulation. The final jury instruction thus read in pertinent part:

"The Plaintiff Shelly K. Herrell further claims that she sustained injuries and damages due to the fault of the defendant National Beef Packing Company, LLC, by not complying with the industry standard set out in OSHA Reg. 1910.23(a)(8)[,] which requires every floor hole into which persons can accidentally walk to be guarded by either: (i) a standard railing with standard toeboard on all exposed sides, or (ii) a floor hole cover of standard strength and construction. While the cover is not in place, the floor hole shall be constantly attended by someone or shall be protected by a removable standard railing."

National Beef's mid-trial motion for directed verdict, also known as a motion for judgment as a matter of law, based in part on the *Dillard* legal argument, was also unsuccessful. The district judge refused to change his pretrial ruling, adding:

"The hole itself is not inherently dangerous. Covering the hole with rendering makes it dangerous. The entire operation could have been turned over to J.A.G. And, had National Beef left the area, then clearly the cases cited by Defendant starting with *Dillard [v]. Strecker* would be applicable. But, that's not the case.

"They continued working there. They covered the floor with a substance that [*sic*] hid dangerous holes in this case. They should have known that under the circumstances they were creating a dangerous situation. And, in light of that, the Motion for Direct Verdict is going to be denied."

During closing argument, Herrell's counsel referred briefly to the instruction excerpt concerning the OSHA regulation:

"[T]his is a quote of the OSHA regulation that deals with holes in the floor. They didn't receive a citation by OSHA. There's not ever been a suggestion of that. OSHA probably doesn't even know about it. But, that's what the OSHA regulation requires, and you probably heard my questioning yesterday, and it seemed like strange questions that a floor hole and a standard grate, or railing or whatever. Read that. This is a quote of the instruction, or excuse me, this instruction is a quote of the OSHA regulation that deal[s] with this."

The jury returned a general verdict in favor of Herrell, assessing damages of $251,197.86. The verdict form did not permit the jury to attribute all or any part of its decision to a particular theory of fault advanced by Herrell. The jury assigned 47.5 percent of fault to National Beef, 32.5 percent of fault to J-A-G, 15 percent to Terracon, and 5 percent to Herrell.

*Court of Appeals Proceedings*

National Beef raised only one issue in its appeal brief filed with the Court of Appeals: Was there a duty as a matter of law? Both parties agreed that the question is one of law subject to unlimited review. See *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005).

National Beef, as it did before the district court, placed heavy reliance on this court's 1994 decision in *Dillard*, which it regarded as indistinguishable on a policy basis from this case. The court, it stressed, "must decide whether Kansas law would allow employees of independent contractors to recover more for their injuries than a property owner's own employees can recover for the same injur[ies]."

For her part, Herrell insisted that *Dillard* was distinguishable in important factual and legal respects and stressed the following self-limiting language of its holdings:

"(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance. (2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation. (3) Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion." *Dillard*, 255 Kan. at 726-27.

The majority of the Court of Appeals panel reversed and remanded for entry of judgment as a matter of law in favor of National Beef. *Herrell*, 41 Kan. App. 2d at 325. It relied on *Dillard* to conclude that "an employee of an independent contractor covered by workers compensation insurance cannot recover in negligence from the landowner, regardless of the employee's underlying theory of the landowner's liability." *Herrell*, 41 Kan. App. 2d at 315. An exception to this rule would arise only if the landowner maintained substantial control over the activities of the independent contractor on the premises. *Herrell*, 41 Kan. App. 2d at 320.

In the alternative, the Court of Appeals majority predicted that this court would require a landowner to control the details of the project and the contractor's activities in order to impose liability on the landowner. *Herrell*, 41 Kan. App. 2d at 322. Because, in its view, the record contained inadequate evidence of such control by National Beef, judgment in its favor as a matter of law also was appropriate and must be upheld. *Herrell*, 41 Kan. App. 2d at 323.

Judge McAnany agreed with his colleagues that the panel was required to set aside the judgment against National Beef, but only because the general verdict may have been influenced by Herrell's theory of liability based upon the OSHA regulation. *Herrell*, 41 Kan. App. 2d at 325, 336 (McAnany, J., concurring in part and dissenting in part). But he disagreed that the policy considerations recited in the *Dillard* decision should be extended to fully immunize National Beef from liability. *Herrell*, 41 Kan. App. 2d at 325 (McAnany, J., concurring in part and dissenting in part).

## ANALYSIS

We accepted this case on Herrell's petition for review. Although the petition lists two issues, the second is actually a subissue of the first. We therefore ask ourselves the same question National Beef asked when it initially took this appeal: Did National Beef owe a duty of care to Herrell?

We also note another initial refinement of the issue before us. In its response to Herrell's petition for review and again at oral argument before this court, National Beef relied entirely on the Court of Appeals majority's application of *Dillard* to argue that it should prevail. National Beef argues the only issue is "[whether] the Court of Appeals properly appl[ied] *Dillard* in finding that Appellee had no duty of care with respect to Appellant." It no longer argued that the Court of Appeals should be affirmed be-cause National Beef lacked control over the workplace or the con-tractor's activities. Given that National Beef does not contest, for purposes of summary judgment, that rendering was covering what-ever hole Herrell fell into, and that the existence of the rendering was an inevitable byproduct of its continued operation of the plant, its decision to push its control argument into the tall grass appears to be prudent appellate strategy. In any event, we need address the control argument no further here. See *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004) (appellant abandons issue on appeal by not adequately briefing issue).We focus our full concen-tration on whether *Dillard* can stretch as far as National Beef would have it go.

The parties are correct that the existence of a duty is a question of law and that we have unlimited review. See *South*, 280 Kan. at 94.

A landowner generally owes to entrants upon his or her land a duty of reasonable care under the circumstances. *Jones v. Hansen*, 254 Kan. 499, 509, 867 P.2d 303 (1994). This duty includes a duty to warn of a dangerous condition on the property. Restatement (Second) of Torts § 343 (1964).

The *Dillard* opinion carved out an exception to these general rules of Kansas premises liability, absolving a landowner of any duty

in certain circumstances. In order to decide whether the general rule or the *Dillard* exception governs this case, we must first understand what the *Dillard* case did and did not do and then discuss how our workers compensation statutes address the possibility of third-party liability.

*Dillard v. Strecker*

*Dillard* involved a collapse of a wall at a building site for a church and school. Plaintiff Lee Dillard, who was employed by a masonry subcontractor, was seriously hurt in the collapse and was covered by workers compensation for his injuries. He sued the owners of the site, the Roman Catholic archdiocese and its then archbishop, Ignatius J. Strecker, alleging that the defendants were directly liable because of their failure to obtain legally required inspections and vicariously liable for the negligence of his employer, the subcontractor, and/or the general contractor under the inherently dangerous activity doctrine. The plaintiff argued "that while the Workers Compensation Act provides an 'exclusive remedy' against an employer, the act does not bar recovery against negligent third parties," and the defendants qualified as such third parties. *Dillard*, 255 Kan. at 708.

The *Dillard* defendants' principal counterargument was that a landowner owed " 'no duty to an employee of an independent contractor performing work for the landowner.' " 255 Kan. at 708. Instead, the injured employee's recovery should be limited to workers compensation benefits provided by his or her employer. To allow recovery against the landowner would permit " 'an end-run around the workers compensation law,' " a form of " 'double recovery.' " 255 Kan. at 708.

The district court granted defendants' motion to dismiss, treated as a motion for summary judgment, and the Court of Appeals affirmed.

When the case reached this court, we began our opinion by assuming that the archbishop had a nondelegable duty under the local building code to provide an independent inspector for the masonry work, and that the masonry work qualified as an inherently dangerous activity. *Dillard*, 255 Kan. at 707. We stated the issue

broadly: "[W]hether a landowner is liable for the negligence of an independent contractor which results in a work-related injury to an employee of the independent contractor when the employee is covered by workers compensation." 255 Kan. at 707.

To resolve this issue, this court relied entirely on cases from other jurisdictions and the policy jusitifcations we culled from them. Cases from Missouri, Maryland, and Connecticut had figured most prominently in the resolutions arrived at in the district court and in the Court of Appeals. Each case protected a defendant landowner when an injured employee of an independent contractor working on the landowner's property sought imposition of direct liability for violation of a nondelegable duty or vicarious liability under the inherently dangerous activity doctrine. See *Dillard*, 255 Kan. at 710-18 (discussing *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 [Mo. 1991] [inherently dangerous activity]; *Parker v. Neighborhood Theatres*, 76 Md. App. 590, 547 A.2d 1080 [1988] [nondelegable duty]; *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 [1988] [inherently dangerous activity, nondelegable duty]).

*Zueck*, the Missouri case, dealt with a landowner's vicarious liability. The *Zueck* court recognized that a landowner generally exercised no right of control over the manner in which an independent contractor performed work on the landowner's property and was thus protected from vicarious liability for the contractor's negligence. *Dillard*, 255 Kan. at 711 (quoting *Zueck*, 809 S.W.2d at 386 [citing Prosser & Keaton, The Law of Torts, p. 509 (5th ed. 1984)]). An exception to landowner protection from vicarious liability existed at common law if the landowner knew or should have known that the work to be performed by the independent contractor was abnormally dangerous and the contractor failed to take adequate precautions. See *Dillard*, 255 Kan. at 711 (discussing *Zueck*, 809 S.W.2d at 386). The narrow scope of the exception discouraged landowners from hiring inexpensive but unqualified or careless contractors.

The Missouri court believed that this inherently dangerous activity exception was undercut by the adoption of comprehensive workers compensation statutes, under which injured employees

sacrificed the ability to sue their employers but not necessarily owners of the premises who contracted with employers in exchange for certain recovery of limited amounts. See *Dillard*, 255 Kan. at 712 (discussing *Zueck*, 809 S.W.2d at 390). The Missouri court did not want to provide an incentive for landowners to have their own, less-than-expert employees perform dangerous tasks, preferring to encourage landowners to hire independent contractors when the contractors' skills were appropriate for the work. It also reasoned that the contract price included a markup for the cost of the contractors' workers compensation coverage, and it did not want to force landowners to pay this portion of the contract price twice by allowing liability. *Dillard*, 255 Kan. at 713 (citing *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128 [Mo. 1993] [relying on *Zueck*, 809 S.W.2d at 388]).

In the Maryland case, *Parker*, 76 Md. App. 590, an injured contractor employee claimed that he was owed a nondelegable duty by the defendant landowner under a county building code requiring the premises to be kept in a reasonably safe condition. See *Dillard*, 255 Kan. at 714 (discussing *Parker*, 76 Md. App. at 594). The Maryland court refused to recognize such a duty, even though it conceded that the landowner's responsibilities under the code could not be farmed out to a contractor: " 'As to the public generally, the duty remains[;] but it does not extend to employees of the contractor who already have a remedy paid for by the owner . . . . No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law.' " *Dillard*, 255 Kan. at 715 (quoting *Parker*, 76 Md. App. at 601-02).

The Connecticut case, *Ray*, 16 Conn. App. 660, involved an independent contractor's employee who sued a landowner under both vicarious and direct liability theories. As our *Dillard* opinion explained:

"Under the vicarious liability theory, the employee argued alternative claims, maintaining that the landowners failed to take appropriate safety precautions required because (1) the work was inherently dangerous, and (2) a nondelegable duty was owed to the employees to ensure a safe workplace. Under the direct liability theory, the employee alleged that the landowners were negligent in failing

to exercise reasonable care in their selection of the independent contractor." *Dillard*, 255 Kan. at 716.

The Connecticut court concluded that liability would not be permitted, distinguishing an employee of an independent contractor with workers compensation coverage from a member of the general public, and noting that the contract price charged to the landowner presumably would have included the cost of workers compensation coverage. The court also wanted to avoid the perversity of imposing greater liability on a landowner when an employee of an independent contractor was injured, as compared to when an employee of the landowner was injured. Again, the court hoped to encourage landowners to hire contractors with needed expertise. The court also believed that the employee's knowledge of any hazard would be superior to that of the landowner, making imposition of liability on the landowner unfair. *Dillard*, 255 Kan. at 718 (quoting *Ray*, 16 Conn. App. at 668-70).

In addition to these three cases, our *Dillard* opinion also cited cases from 6 federal circuits, 2 federal district courts, and 17 additional states as consistent in rejecting landowner liability on at least one of the two theories before it. See *Dillard*, 255 Kan. at 721 (citing *Scofi v. McKeon Const. Co.*, 666 F.2d 170 [5th Cir. 1982]; *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848 [2d Cir. 1981]; *Nelson v. United States*, 639 F.2d 469 [9th Cir. 1980]; *Chavis v. Finnlines Ltd.*, *OY*, 576 F.2d 1072 [4th Cir. 1978]; *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030 [5th Cir. 1977], *cert. denied* 435 U.S. 924 [1978]; *Craig v. Olin Mathieson Chemical Corporation*, 427 F.2d 962 [7th Cir.], *cert. denied* 400 U.S. 964 [1970]; *Parsons v. Amerada Hess Corporation*, 422 F.2d 610 [10th Cir. 1970]; *Lipka v. United States*, 369 F.2d 288 [2d Cir. 1966], *cert. denied* 387 U.S. 935 [1967]; *Galbraith v. United States*, 296 F.2d 631 [2d Cir. 1961]; *Wallach v. United States*, 291 F.2d 69 [2d Cir.], *cert. denied* 368 U.S. 935 [1961]; *Corban v. Skelly Oil Company*, 256 F.2d 775 [5th Cir. 1958]; *Hurst v. Gulf Oil Corporation*, 251 F.2d 836 [5th Cir. 1958]; *Ackerman v. Gulf Oil Corp.*, 555 F. Supp. 93 [D. N.D. 1982]; *Olson v. Kilstofte and Vosejpka, Inc.*, 327 F. Supp. 583 [D. Minn. 1971]; *Morris v. City*

*of Soldotna*, 553 P.2d 474 [Alaska 1976]; *Sloan v. Atlantic Richfield Company*, 552 P.2d 157 [Alaska 1976]; *Matanuska Electric Association, Inc. v. Johnson*, 386 P.2d 698 [Alaska 1963]; *Mason v. Arizona Public Serv. Co.*, 127 Ariz. 546, 622 P.2d 493 [Ct. App. 1980]; *Welker v. Kennecott Copper Company*, 1 Ariz. App. 395, 403 P.2d 330 [1965]; *Jackson v. Petit Jean Electric Co-op*, 270 Ark. 506, 606 S.W.2d 66 [1980]; *Florida Power and Light Co. v. Price*, 170 So. 2d 293 [Fla. 1964]; *Pearson v. Harris*, 449 So. 2d 339 [Fla. Dist. App. 1984]; *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102 [1987]; *Johns v. New York Blower Co.*, 442 N.E.2d 382 [Ind. App. 1982]; *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 [Ky. 1973], *cert. denied* 417 U.S. 932 [1974]; *Vertentes v. Barletta Co.*, 392 Mass. 165, 466 N.E.2d 500 [1984]; *Conover v. Northern States Power Co.*, 313 N.W.2d 397 [Minn. 1981]; *Sierra Pac. Power Co. v. Rinehart*, 99 Nev. 557, 665 P.2d 270 [1983]; *Donch v. Delta Inspection Services, Inc.*, 165 N.J. Super. 567, 398 A.2d 925 [1979]; *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 [1963]; *Cooper v. Metropolitan Government, Etc.*, 628 S.W.2d 30 [Tenn. App. 1981]; *Humphreys v. Texas Power & Light Company*, 427 S.W.2d 324 [Tex. Civ. App. 1968]; *Humble Oil & Refining Co. v. Bell*, 180 S.W.2d 970 [Tex. Civ. App. 1943]; *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash. 2d 274, 635 P.2d 426 [1981]; *Epperly v. Seattle*, 65 Wash. 2d 777, 399 P.2d 591 [1965]; *Potter v. Kenosha*, 268 Wis. 361, 68 N.W.2d 4 [1955]; *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029 [Wyo. 1987]).

The *Dillard* opinion acknowledged contrary rulings from one federal circuit and five other states but characterized them as "inapposite to the specific issue under discussion" because they did not discuss the policy justifications central to the majority rule. See *Dillard*, 255 Kan. at 722 (citing *Lindler v. District of Columbia*, 502 F.2d 495 [D.C. Cir. 1974]; *Van Arsdale v. Hollinger*, 68 Cal. 2d 245, 66 Cal. Rptr. 20, 437 P.2d 508 [1968]; *Makaneole v. Gampon*, 70 Hawaii 501, 777 P.2d 1183 [1989]; *Giarratano v. The Weitz Co., Inc.*, 259 Iowa 1292, 147 N.W.2d 824 [1967]; *Perry v. McLouth Steel Corp.*, 154 Mich. App. 284, 397 N.W.2d 284 [1986]; *Vannoy v. City of Warren*, 15 Mich. App. 158, 166 N.W.2d 486

[1968]; *Elliott v. Public Serv. Co. of N.H.*, 128 N.H. 676, 517 A.2d 1185 [1986]).

On its way to its public policy-based outcome, the *Dillard* opinion also dismissed the implications of an earlier Kansas vicarious liability case, *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983). *Balagna* involved the death of an employee of a general contractor on a construction project, and the main issue was whether the landowner could be liable for the contractor's negligent failure to shore up the ditch in which the employee was fatally injured. This court embraced both the general principal of no landowner vicarious liability set forth in Restatement (Second) of Torts § 409 (1964) and the inherently dangerous activity exception to the general principal set forth in Restatement (Second) of Torts § 427 (1964). Yet, under these rules, it ultimately held that there could be no landowner liability in the case before it, because the activity engaged in by the employee did not qualify as inherently dangerous. *Balagna*, 233 Kan. at 1082.

The *Dillard* opinion gave *Balagna* and cases akin to it short shrift:

"Kansas has clearly recognized the inherently dangerous activity doctrine. However, the fact that the doctrine has been recognized and applied in Kansas is not determinative of the case now before us. None of the Kansas cases we have found addressed the issue of the effect of workers compensation on the applicability of the inherently dangerous activity doctrine under facts similar to the present case. The various policy reasons precluding liability of a landowner for injuries suffered by an employee of an independent contractor covered by workers compensation were not raised or considered in our earlier cases. We find the various policy provisions discussed in the various cases cited herein not only persuasive but also determinative of this case." 255 Kan. at 725.

The *Dillard* opinion had already specifically stated that the controlling policy considerations applied to both the vicarious liability and direct liability claims before it. See *Dillard*, 255 Kan. at 715. It then enumerated nine policy rationales to support its conclusion that the archbishop and archdiocese had no duty:

"(1) The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee.

"(2) The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees.

"(3) Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor.

"(4) Employees of an independent contractor, and their dependents, are protected under the provisions of the workers compensation statutes.

"(5) Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly.

"(6) Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and methods of avoiding such risks that an independent contractor engaged in such activity possesses.

"(7) Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work.

"(8) To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous activity doctrine would (a) reward landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury.

"(9) A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor." *Dillard*, 255 Kan. at 725-26.

The opinion also assigned numbers to its specific substantive holdings:

"(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance.

"(2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation." *Dillard*, 255 Kan. at 726-27.

All of the discussion of *Dillard* above outlines what it *did*. But this court was at least as emphatic about what it *did not do*. As Herrell has emphasized, its third numbered "holding" read: "Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion." 255 Kan. at 727. Furthermore,

this court had already twice taken pains to point out that it was considering only the two theories of recovery advanced—direct liability based on the archbishop's and archdiocese' failure to comply with the building code's nondelegable inspection requirement and vicarious liability under the inherently dangerous activity doctrine. *Dillard*, 255 Kan. at 707-08 (setting out plaintiff's two theories), 709-10 (noting authorities from other jurisdictions had intertwined direct nondelegable duty liability, vicarious liability).

Herrell is not urging us to overrule *Dillard*, and we accept its continuing controlling force on the two theories of landowner liability it so thoroughly addressed. Yet its limitations—and the court's intention that those limitations have meaningful impact in future cases—could not be more clear. Herrell's premises cause of action alleging direct negligence by National Beef in creating a hazardous condition and failing to warn of it is not controlled by *Dillard*. It is neither based on a nondelegable statutory or regulatory duty of National Beef nor based on negligence of Herrell's employer for which National Beef may be exposed to vicarious liability. See also *Dye v. WMC, Inc.*, 38 Kan. App. 2d 655, 665, 172 P.3d 49 (2007) (recognizing application of *Dillard* in "some" negligence contexts). In these circumstances, we are unwilling to absolve National Beef of any duty to Herrell based purely on the policy considerations upon which *Dillard* exclusively relied. Compare *McCubbin v. Walker*, 256 Kan. 276, 297, 886 P.2d 790 (1994) (declining to extend *Dillard* to all cases involving landowners, injured employees of independent contractors; issue not directly determinative); *Cuiksa v. Hallmark Hall of Fame Productions, Inc.*, 252 F. Supp. 2d 1166, 1175 (D. Kan. 2003) (limiting reach of *Dillard* to landowner defendants); *Martin v. Mapco Ammonia Pipline, Inc.*, Nos. CIV.A. 93-2218-GTV and CIV.A. 93-2303-GTV, 1994 WL 409591, *7 (D. Kan. 1994) (unpublished opinion) (limiting reach of *Dillard* to landowner defendants). Rather, we turn to our workers compensation statutory scheme, that is, to what the Kansas Legislature has actually said about public policy choices. If those statements are clear, we need not guess or speculate, no matter how much company we may have from other jurisdictions if we were to do so.

*Workers Compensation Provisions*

When we must interpret statutes, our touchstone is legislative intent.

" '[T]he intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

"Where a statute's language is subject to multiple interpretations, however, a reviewing court 'may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]' *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000). Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory provision 'from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, 'courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.*' *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975)." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754-55, 189 P.3d 494 (2008).

As described in the *Dillard* decision,

"[i]t has long been the law of Kansas that an employer's liability for injury to an employee is limited exclusively to recovery under the Workers Compensation Act. As such, where the injury and the employer-employee relationship fall within the scope of the Act, the exclusive remedy provision of K.S.A. 44-501(b) precludes an employee from maintaining a civil action against the employer. *Tomlinson v. Owens-Corning Fiberglas Corp.*, 244 Kan. 506, Syl. ¶ 3, 770 P.2d 833 (1989). In *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, 401, 729 P.2d 1214 (1986), this court discussed the relevant statutory provision, stating:

'This statute is commonly referred to as the exclusive remedy provision of the Workmen's Compensation Act, K.S.A. 44-501 *et seq*. If a worker can recover benefits for an injury from an employer under the provisions of the Workmen's Compensation Act, its remedy is exclusive, precluding a common-law negligence action for damages against the employer. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 3, 658 P.2d 1004 (1983); *Fugit, Administratrix v. United Beechcraft, Inc.*, 222 Kan. 312, 314, 564 P.2d 521 (1977). This furthers the policy and purpose of the Workmen's Compensation Act, which is to provide an established source of benefits to the employee for injuries arising out of and in the course of his employment, and to shift from the employee to the industry certain burdens incidental to modern industrial operations. *Duncan v. Perry Packing Co.*, 162 Kan. 79, 84, 174 P.2d 78 (1946). Further, the provisions of the Act are to be liberally construed to bring workers under the Act whether or not it is desirable for the specific individual's circumstance. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 5.'

"However, while the liability of the employer is limited, the employee can still bring an action against and recover damages from a negligent third party. K.S.A. 44-504(a) provides:

'When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.'" *Dillard*, 255 Kan. at 708-09.

Neither the exclusive remedy provision of K.S.A. 44-501(b) nor the third-party provision of K.S.A. 44-504(a) was amended from the time *Dillard* discussed them in 1994 until the time of Herrell's accident. See K.S.A. 44-504(a) (showing no amendments since 1993); K.S.A. 44-501(b) (nonpertinent amendments L. 1996, ch. 79, sec. 1; L. 2000, ch. 160, sec. 5; L. 2005, ch. 54, sec. 1).

Under the plain language of these two statutes, a landowner in National Beef's position is not excluded from liability if its negligence causes injury to an independent contractor's employee while that employee is working on the landowner's property. It is not the employer, so it cannot claim the protection of K.S.A. 44-501(b)'s exclusive remedy provision. And it is not omitted from the ranks of third parties that "shall" be subject to suit under K.S.A. 44-504(a). The workers compensation statutory scheme simply does

not respond to the general common law of premises liability. It certainly could do so if the legislature chose this policy route. Thus National Beef owed Herrell the same duty it owed to other entrants onto its property—a duty of reasonable care under the circumstances, including a duty to warn of any dangerous condition. The district judge was correct to deny judgment as a matter of law to National Beef on this claim.

This ruling does not completely dispose of this appeal, however. We must also deal with Herrell's pursuit of National Beef because of its failure to comply with the OSHA regulation, a subject we turn to now.

*OSHA Regulation*

The district judge included in his instructions to the jury a description of OSHA Reg. 1910.23(a)(8), which deals with precautions to be taken when there is a hole in a workplace floor. The jury was told Herrell alleged that her injuries and damages were caused by National Beef's violation of the "industry standard" set by the regulation, and the general verdict form did not permit the jury to designate whether all or part of the damages awarded to Herrell were attributable to any particular legal theory. In other words, we cannot be certain on the record before us whether the OSHA regulation played any role in the jury's decision or, if it did play a role, how to account for it on this appeal.

This uncertainty matters because Herrell's OSHA regulation violation theory of recovery is foreclosed by *Dillard*'s first substantive holding. It qualifies as a direct negligence action against National Beef based on its alleged violation of a nondelegable regulatory duty. This claim is legally indistinguishable from that dependent on the archbishop's and archdiocese' failure to ensure the performance of inspections under the building code. See *Dillard*, 255 Kan. at 727. Thus, *Dillard* does control this theory; no duty arose, and the claim should have been disposed of as a matter of law. Its inclusion in the jury instructions, with no opportunity for the jury to differentiate any liability based upon it in the general verdict form, polluted the trial of this case and necessitates reversal. Because of our holding that National Beef did have a typical land-

owner duty of reasonable care, however, we agree with Judge McAnany that this case must be remanded for further district court proceedings, not merely for entry of judgment as a matter of law in favor of National Beef.

## CONCLUSION

The Court of Appeals is affirmed in part and reversed in part. The district court is affirmed in part, and reversed in part, and this case is remanded to the district court for further proceedings consistent with this opinion.

DAVIS, C.J., not participating.
JOHN C. GARIGLIETTI, District Judge, assigned.