No. 117,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARCIA HUTSON,
*Appellant*,

v.

SUSAN MOSIER, M.D., in her official capacity as
SECRETARY OF KANSAS DEPARTMENT OF HEALTH
AND ENVIRONMENT,
*Appellee*.

SYLLABUS BY THE COURT

1.

The scope of judicial review of a state administrative agency action is defined by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The party asserting the invalidity of an agency's action bears the burden of proving invalidity.

2.

Interpretation of a statute or an administrative regulation is a question of law over which appellate courts have unlimited review.

3.

The United States Congress created the Medicaid program to provide federal financial assistance to states that reimburse the costs of medical treatment for those in need. Because it is a cooperative federal and state program, both federal and state law govern Medicaid.

1

**4.**

Kansas has elected to participate in Medicaid and must comply with federal requirements for making eligibility determinations, collecting and maintaining information, and administering the program.

**5.**

Generally, trust funds are to be counted as assets in making Medicaid eligibility determinations.

**6.**

A person 65 or older may participate in a pooled supplemental or special needs trust under the provisions of 42 U.S.C. § 1396p(d)(4)(C) (2012). However, a person age 65 or older who transfers assets to a pooled supplemental or special needs trust is subject to the imposition of a transfer penalty under the rules of subsection 42 U.S.C. § 1396p(c)(1) if the transfer is for less than fair market value.

**7.**

Trusts established for disabled persons are exempt from application of the transfer of assets penalty provisions only when the disabled person is under the age of 65.

**8.**

The determination of the fair market value of property—whether real or personal—is generally a question of fact.

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed September 8, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Molly M. Wood*, of Stevens & Brand, L.L.P., of Lawrence, for appellant.

*Ron M. Landsman*, of Ron M. Landsman, P.A., of Rockville, Maryland, and *Craig Reaves*, of Reaves Law Firm, P.C., of Kansas City, Missouri, for amicus curiae National Academy of Elder Law Attorneys, Inc.

*Karen H. Weber*, of Law Offices of Karen H. Weber, of Overland Park, for amicus curiae Special Needs Alliance, Inc.

*Brian M. Vazquez*, of Kansas Department of Health & Environment, for appellee.

Before BRUNS, P.J., MCANANY, J., and STEVEN R. EBBERTS, District Judge, assigned.

BRUNS, J.: In this judicial review action, Marcia Hutson appeals from the district court's decision affirming a final order issued by the Division of Health Care Finance State Appeals Committee arising out of a Medicaid eligibility determination. The district court upheld the imposition of a transfer penalty that significantly delayed Hutson's receipt of Medicaid benefits for her long-term care. The Kansas Department for Children and Families (DCF)—the state agency handling Medicaid eligibility processing at the time—imposed the penalty on Hutson because she transferred assets to a pooled supplemental needs trust when she was in her 70s. After an administrative law judge and the State Appeals Committee upheld the imposition of the transfer penalty, Hutson sought judicial review. The district court also upheld the penalty because it found that Hutson did not receive fair market value for her transfer.

We find as a matter of law that transfers of assets by Medicaid applicants age 65 or older to a pooled supplemental needs trust are subject to a penalty period if the transfer is for less than fair market value. However, because we find that whether a particular transfer to a pooled supplemental needs trust is for less than fair market value is a question of fact, we vacate the part of the district court's order that found as a matter of law that Hutson "did not receive fair market value for her transfer." Accordingly, we

3

affirm the district court's decision in part, we vacate it in part, and we remand this matter for further proceedings consistent with this opinion.

FACTS

On August 10, 2015, Hutson—who resides in a nursing home facility in Eudora— transferred $59,528.42 of assets to ARCare Trust II Pooled Trust. The trustee is ARCare, Inc., which is a not-for-profit corporation that established the irrevocable pooled supplemental needs trust in 1996 to help elderly and disabled people pay for living expenses not covered by needs-based public benefit programs. The assets that Hutson transferred to the pooled trust were funds that she received from the sale of her home as well as from life insurance following the death of her husband. At the time of the transfer of assets, Hutson was 72 years old.

Under the terms of the Transfer-Joinder Agreement signed on June 19, 2015, ARCare, Inc. is to administer a sub-account within the pooled trust for the sole benefit of Hutson. Specifically, the funds in the sub-account are to be used to maintain Hutson's "health, safety and welfare . . . when, in the discretion of the [trustee], such requisites are not being provided by any public agency, office, or department of the state . . . or are not otherwise being provided by any other source of income available to [Hutson]." As the trustee of the pooled supplemental needs trust, ARCare, Inc. has a contractual obligation to pay for Hutson's needs in order to enhance her quality of life. Although ARCare, Inc. has absolute discretion to approve or disapprove requests for disbursements from Hutson's sub-account, it must act in good faith in administering the pooled trust.

Furthermore, the terms of the pooled supplemental needs trust provide that upon Hutson's death, the trustee must reimburse the State for the total amount of Medicaid benefits paid on her behalf if there are available funds left in her sub-account. If any residual funds are left in Hutson's sub-account after the State has been reimbursed, these

4

funds are to remain in the pooled supplemental needs trust to aid other trust beneficiaries, to assist other indigent people with disabilities, or to be used for other charitable purposes as determined by the trustee. Hutson's life expectancy is approximately 13 years based on actuarial tables. Moreover, ARCare, Inc. estimates that at her current rate of supplemental expenses, Hutson will likely exhaust her sub-account in four to six years.

On August 24, 2015, Hutson applied to DCF in Lawrence for Medicaid benefits to assist with her long-term care needs. In support of her Medicaid application, Hutson submitted a copy of the Transfer-Joinder Agreement that she had entered into with ARCare, Inc. Hutson's daughter subsequently provided additional information to DCF in support of her mother's application. In a notice dated October 19, 2015, DCF approved Hutson's application for Medicaid assistance to assist with her long-term care expenses. However, DCF imposed a transfer penalty that delayed Medicaid payments for a period of 313 days.

On November 13, 2015, Hutson appealed the imposition of the transfer penalty to the State Office of Administrative Hearings. The administrative law judge held a prehearing conference, at which the parties evidently agreed that the judge should decide the matter on the briefs. Because DCF was no longer handling Medicaid eligibility determinations, the Kansas Department of Health and Environment (KDHE) replaced DCF as the respondent in the administrative proceeding. Finally, on February 17, 2016, the administrative law judge issued an initial order summarily affirming the imposition of the transfer penalty.

On March 2, 2016, Hutson filed a request with the Division of Health Care Finance State Appeals Committee for review of the initial order issued by the administrative law judge. The State Appeals Committee—in its capacity as designee for the Secretary of KDHE—issued a final order on April 11, 2016, affirming the initial order. Thereafter, Hutson timely filed a petition for judicial review in district court.

On November 8, 2016, the district court entered a memorandum decision affirming the agency action. In reaching this decision, the district court concluded:

> "While the court sympathizes with [Hutson's] circumstances and concerns, the federal statutory language [found in 42 U.S.C. § 1396p(d)(4) (2012) and incorporated into K.A.R. 129-6-109(c)(2)(G)] is clear. [Hutson] was over 65 at the time of the transfer and did not receive fair market value for her transfer. Accordingly, [the agency] correctly determined that the transfer was an uncompensated transfer subjecting [Hutson] to a period of ineligibility."

On December 2, 2016, Hutson filed a notice of appeal. We subsequently granted the National Academy of Elder Law Attorneys, Inc. and the Special Needs Alliance, Inc. leave to file amicus briefs in this case. In addition, we granted leave to the National Academy of Elder Law Attorneys, Inc. to participate in the oral arguments.

ANALYSIS

*Issues Presented*

On appeal, Hutson contends that the district court erred in interpreting the applicable federal law and state administrative regulations relating to Medicaid eligibility. Moreover, Hutson argues that she received fair market value for her transfer of assets to the pooled supplemental needs trust, and as such, she should not be subject to a transfer penalty. In response, KDHE contends that DCF appropriately imposed a transfer penalty against Hutson because she did not receive fair market value for the transfer of her assets to the pooled supplemental needs trust.

*Standard of Review*

This appeal arises out of a judicial review action commenced by Hutson in district court. The scope of judicial review of a state administrative agency action is defined by

the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012); *Muir v. Kansas Health Policy Authority*, 50 Kan. App. 2d 854, 856, 334 P.3d 876 (2014). Under the KJRA, we exercise the same statutorily limited review of an agency's action as does the district court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). The party asserting the invalidity of an agency's action—in this case Hutson—bears the burden of proving invalidity. K.S.A. 2016 Supp. 77-621(a)(1); see *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014).

Interpretation of a statute or an administrative regulation is a question of law over which we have unlimited review. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012). When a statute or regulation is plain and unambiguous, we are to give effect to the intent expressed through the words used—giving common words their ordinary meaning—instead of attempting to determine what the law should or should not be. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). Where there is no ambiguity, we are not to resort to statutory construction. Rather, only if the language or text is unclear or ambiguous are we to look at the canons of construction or legislative history. 304 Kan. at 409.

*Federal Medicaid Law*

The United States Congress created the Medicaid program in 1965 to provide federal financial assistance to states that reimburse the costs of medical treatment for the needy. *Schweiker v. Hogan*, 457 U.S. 569, 571, 102 S. Ct. 2597, 73 L. Ed. 2d 227 (1982). The purpose of Medicaid is to provide medical and rehabilitation assistance to those who qualify as poor, aged, blind, or disabled. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 317, 291 P.3d 1056 (2013). As a cooperative federal and state program, both federal and state laws govern Medicaid. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36-37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981); see *Muir*, 50 Kan. App. 2d at 859.

7

Although it is not required to do so, Kansas has elected to participate in the Medicaid program. See *Village Villa*, 296 Kan. at 317.

Once a state chooses to participate in the Medicaid program, it must comply with various federal statutes and regulations governing its administration. *Houghton ex rel. Houghton v. Reinertson*, 382 F.3d 1162, 1164-65 (10th Cir. 2004). A participating state is also required to submit a plan to the United States Secretary of Health and Human Services under 42 U.S.C. § 1396a(a) (2012). Once the plan is approved, the federal government subsidizes the participating state's medical-assistance services. In addition, the participating state must comply with "certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program." *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 275, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006).

Participating states are given "substantial discretion to choose the proper mix of amount, scope, and duration limitations" of their respective Medicaid programs. *Alexander v. Choate*, 469 U.S. 287, 303, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985). Nevertheless, the failure of a participating state to comply with federal law places the state's receipt of federal funding at risk. See 42 U.S.C. § 1396a(a); see also 42 U.S.C. § 1396c (2012). Of particular relevance to the present case, participating states must "comply with the provisions of section 1396p . . . with respect to . . . treatment of certain trusts." 42 U.S.C. § 1396a(a)(18).

To be eligible for Medicaid, a person must have income and assets less than the thresholds set by the United States Secretary of Health and Human Services. See 42 U.S.C. § 1396a(a)(17). For many years, individuals could transfer funds to a trust in order to reduce the amount of assets considered for Medicaid eligibility. *Lewis v. Alexander,* 685 F.3d 325, 332 (3d Cir. 2012). However, the Omnibus Budget Reconciliation Act of 1993 amended 42 U.S.C. § 1396p (2012) to provide that trust funds would—as a general

8

rule—be counted as assets for the purpose of determining Medicaid eligibility. Today, subject to certain exceptions, funds held in trust are generally counted as resources for determining Medicaid eligibility. 42 U.S.C. § 1396p(d)(3).

Three types of trusts are not subject to the general rule if certain statutory requirements have been met. See 42 U.S.C. § 1396p(d)(4)(A), (B), and (C). Here, Hutson placed assets into a pooled supplemental needs trust created pursuant to 42 U.S.C. § 1396p(d)(4)(C). A "pooled trust" is "'a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust "accounts" being maintained for each disabled individual.'" *Lewis*, 685 F.3d at 333 (quoting Myskowski, *Special Needs Trusts in the Era of the Uniform Trust Code*, 46 N.H. Bar J., Spring 2005, at 16). "The pooled special needs trust was intended for individuals with a relatively small amount of money. By pooling these small accounts for investment and management purposes, overhead and expenses are reduced and more money is available to the beneficiary." *Lewis*, 685 F.3d at 333.

Regarding pooled supplemental or special needs trusts, which are also referred to as charitable pooled trusts, the Medicaid statute states:

> "(4) [The statutory provisions counting trust funds as assets for purposes of determining Medicaid eligibility] shall not apply to any of the following trusts:
>
> . . . .
>
> (C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
>
> (i) The trust is established and managed by a nonprofit association.
>
> (ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.

9

(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.

(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter." 42 U.S.C. § 1396p(d)(4)(C).

Furthermore, under 42 U.S.C. § 1396p(c)(1), an applicant for Medicaid long term care assistance may be subject to a transfer penalty period if he or she transfers assets for less than fair market value. However, 42 U.S.C. §1396p(c)(2)(B)(iv) provides that a person will not be subject to a transfer penalty if the assets "were transferred to a trust (including a trust described in subsection (d)(4) of this section) established solely for the benefit of an *individual under 65 years of age who is disabled . . . .*" (Emphasis added.)

*Kansas Medicaid Regulations*

In addition to federal Medicaid law, Kansas has promulgated administrative regulations—under the auspices of the Secretary of KDHE or her predecessors—to assist with determining Medicaid eligibility. These regulations have the force and effect of law. K.S.A. 77-425; see *Village Villa*, 296 Kan. at 320. Regarding pooled supplemental or special needs trusts, K.A.R. 129-6-109(c)(2)(G) states:

"(G) [The regulatory provisions counting trusts as available assets for purposes of determining Medicaid eligibility] shall not apply to a trust that contains the assets of an individual who meets the . . . disability criteria of K.A.R. 129-6-85 if the trust meets all the following conditions:

(i) The trust is established by a nonprofit association.

10

(ii) A separate account is maintained for each beneficiary of the trust.

(iii) Accounts in the trust are established solely for the benefit of individuals who meet the . . . disability criteria of K.A.R. 129-6-85.

(iv) Each account in the trust is established by that individual; the parent, grandparent, or legal guardian of the individual; or a court. The state shall receive all amounts remaining in the individual's account upon the death of the individual, up to an amount equal to the total medical assistance paid on behalf of the individual.

*Establishment of a trust under paragraph (c)(2)(G) for an individual who is at least 65 shall be subject to the transfer of assets provisions of K.A.R. 129-6-57.*" (Emphasis added.)

The Kansas regulations also address the transfer of assets by Medicaid applicants. In particular, K.A.R. 129-6-57(b) provides that "[i]f an individual or spouse has transferred or disposed of assets for less than fair market value on or after the specified look-back date as determined by the date of transfer, the individual shall not be eligible for payment of services for any institutionalized individual . . . ." However, K.A.R. 129-6-57(c)(1) states that "[a]n individual shall not be ineligible for payment of services due to a transfer of assets [if] [t]he fair market value of the assets transferred has been received." Furthermore, K.A.R. 129-6-57(c)(5)(C) states that "[an] individual shall not be ineligible for payment of services due to a transfer of assets [to] a trust established solely for the benefit of an individual under 65 years of age who meets the . . . disability criteria of K.A.R. 129-6-85."

"Fair market value" is defined in K.A.R. 129-6-57(a)(3) to mean "the market value of an asset at the earlier of the time of the transfer or the contract of sale." Moreover, pursuant to K.A.R. 129-6-57(a)(2), "compensation" includes "all money, real or personal property . . . or service received by the individual . . . at or after the time of transfer in exchange for the asset in question." The regulation also defines "uncompensated value"

11

to mean "the fair market value of an asset less the amount of any compensation received by the individual . . . in exchange for the asset." K.A.R. 129-6-57(a)(6).

*Application of Medical Statute and Kansas Medicaid Regulations*

Based on our review of the federal law and state administrative regulations, we have no difficulty in concluding that individuals 65 or older may participate in a pooled supplemental or special needs trust under the provisions of 42 U.S.C. § 1396p(d)(4)(C). Likewise, we have no difficulty concluding that the terms of the ARCare Trust II satisfy the Medicaid requirements for a pooled supplemental or special needs trust. The more difficult issue, however, is whether a transfer penalty should be imposed on a Medicaid applicant—like Hutson—who is 65 or older because he or she does not receive fair market value by transferring his or her assets to a pooled trust.

We must answer this question by considering all of the provisions of 42 U.S.C. § 1396p together rather than in isolation. See *Herrell v. National Beef Packing Co.*, 292 Kan. 730, 745, 259 P.3d 663 (2011). In doing so, we find the plain language of the statute to mean that a person age 65 or older who transfers assets to a pooled supplemental or special needs trust is subject to the imposition of a transfer penalty under the rules of subsection 42 U.S.C. § 1396p(c)(1) if the transfer is for less than fair market value. Trusts established for disabled persons are exempt from application of the transfer of assets penalty provisions only when the disabled person is under the age of 65. See 42 U.S.C. § 1396p(c)(2)(B)(iv). Moreover, we find that the Medicaid regulations promulgated by the State of Kansas are consistent with this interpretation. See K.A.R. 129-6-57(b), (c)(1), and (c)(5)(C); K.A.R. 129-6-109(c)(2)(G).

We note that our interpretation of 42 U.S.C. § 1396p is consistent with the opinion handed down by the United States Court of Appeals for the Eighth Circuit in *Center for Special Needs Trust Admin., Inc. v. Olson*, 676 F.3d 688, 702 (8th Cir. 2012). It is also

12

consistent with the opinion of the South Dakota Supreme Court in the case of *In re Pooled Advocate Trust*, 813 N.W.2d 130, 142 (S.D. 2012). In addition, we note that the United States Court of Appeals for the Third Circuit reached the same conclusion in dicta in the case of *Lewis*, 685 F.3d at 351.

In *Olson*, 676 F.3d at 702, the Eighth Circuit held:

"When all paragraphs of [42 U.S.C. § 1396p] are read together, a disabled individual over 65 may establish a type 'C' trust, but may be subject to a delay in Medicaid benefits. Despite the lack of an age limit within paragraph 1396p(d)(4)(C) for purposes of counting resources, Congress intended to exempt transfers of assets into pooled trusts from the transfer penalty rules of subsection 1396p(c)(1) only if the transfers were by those under age 65. 42 U.S.C. § 1396p(c)(2)(B)(iv)."

The Eighth Circuit also concluded that a North Dakota regulation subjecting those who are 65 and over to the penalty of delayed eligibility for Medicaid benefits did not conflict with federal law "[b]ecause Congress intended for transfers of assets into 'C' pooled trusts by beneficiaries age 65 or older to be subject to a transfer penalty period" if the transfer was for less than fair market value. 676 F.3d at 703.

Similarly, in the case of *In re Pooled Advocate Trust*, 813 N.W.2d at 142, the South Dakota Supreme Court held that "under the unambiguous [federal] statutory language, transfers of assets for less than fair market value into pooled trusts by beneficiaries age 65 or older will be subject to a transfer penalty period for Medicaid eligibility purposes." In reaching this conclusion, the court found that a transfer penalty does not deny the applicant the ability to obtain long-term care assistance. Instead, the transfer penalty simply delays an applicant's eligibility to start receiving Medicaid assistance. Although the South Dakota Supreme Court recognized that such a delay may have a significant impact on an applicant, it found that transfer penalties are "designed to

13

preserve Medicaid benefits for those who truly lack the assets or resources to financially secure long-term care." 813 N.W.2d at 143.

Here, it is uncontroverted that Hutson was in her 70s at the time she transferred $59,528.42 in assets to the pooled supplemental needs trust established pursuant to 42 U.S.C. § 1396p(d)(4)(C). Accordingly, we conclude that, if she transferred assets for less than fair market value, the State of Kansas has the authority to impose a transfer penalty on Hutson under the rules set forth in 42 U.S.C. § 1396p(c)(1) and the related Kansas regulations. As indicated above, pooled trusts are intended to assist individuals with a relatively small amount of money who lack the financial resources to secure long-term care. They are not intended to be vehicles for affluent individuals to use in order to divert scarce Medicaid resources from those truly in need. See *Ramey v. Reinertson*, 268 F.3d 955, 961 (10th Cir. 2001); see also *Miller v. State Dept. of S.R.S.*, 275 Kan. 349, 356-57, 64 P.3d 395 (2003) ("Medicaid was designed to provide basic medical care for those without sufficient income or resources to provide for themselves."). Therefore, while we recognize that in some cases the impact of a transfer penalty may seem harsh, the imposition of such penalties are specifically authorized by federal law as well as state regulation, and they serve a legitimate purpose.

*Determination of Fair Market Value*

Finally, Hutson contends that KDHE has failed to show that her transfer of assets to the pooled supplemental needs trust was for less than fair market value. In response, KDHE contends that Hutson has the burden of proof and cannot show that she received fair market value of the transfer of her assets to the pooled supplemental needs trust. Evidently, both parties believe they should prevail on this issue as a matter of law. However, unlike the interpretation of a statute or regulation, the determination of the value of property—whether real or personal—is generally a question of fact and not a question of law. See *In re Estate of Hjersted*, 285 Kan. 559, Syl. ¶ 1, 175 P.3d 810

14

(2008). Moreover, neither party included in their statements of uncontroverted fact, submitted to the administrative law judge, any suggestion as to what the fair market value of the transfer of assets to the pooled trust might have been at the time of the transfer.

In her initial brief, Hutson suggests that she simply exchanged legal title for equitable title. However, she glosses over the plain language of the Transfer-Joinder Agreement in which she gave the trustee absolute discretion over her assets placed into the pooled trust. Although ARCare, Inc.—like any trustee—has a general duty to act in good faith and is contractually obligated to use the funds for Hutson's benefit, we do not find this is sufficient to determine as a matter of law that the transfer of assets was for fair market value.

Hutson also argues that the "evidence [shows] that she received a benefit exceeding zero." Perhaps this is true, but that does not equate to the evidence showing that she received fair market value for the transfer. In addition, she argues in her reply brief that "[a] future benefit has a quantifiable present value." Perhaps this is also true, but we find nothing in the record on appeal that would allow us to determine what that present value was at the time she entered into the Transfer-Joinder Agreement with ARCare, Inc. In fact, we find nothing in the record that would allow us to conclude, as a matter of law, that Hutson received fair market value for the transfer of nearly $60,000 to the pooled supplemental needs trust.

On the other hand, we also find nothing in the record that would allow us to conclude as a matter of law that Hutson received less than fair market value for the transfer of her assets to the pooled supplemental needs trust. As the United States Court of Appeals for the Third Circuit noted, "[b]y pooling these small accounts for investment and management purposes, overhead and expenses are reduced and more money is available to the beneficiary." *Lewis*, 685 F.3d at 333. Although we cannot say as a matter of law what the fair market value of the investment and management services provided

15

by ARCare, Inc. to Hutson was at the time of the transfer of assets, it seems clear that these types of services have a value, which could be considered to be compensation to Hutson under K.A.R. 129-6-57(a)(2).

Under the circumstances presented, we believe that the interests of justice require that we vacate that portion of the district court's decision finding as a matter of law that Hutson "did not receive fair market value for her transfer" of assets to the pooled supplemental needs trust because we do not find substantial evidence in the record to support this conclusion. Accordingly, pursuant to K.S.A. 77-622(b), we remand this matter for an administrative hearing to determine the factual question of whether Hutson transferred assets to the pooled supplemental needs trust for less than fair market value and, if so, to determine if the penalty imposed was appropriate. At the hearing, the burden of proof will be on Hutson as the party asserting the invalidity of an agency's action. Although we do not know whether she will be able to meet her burden of proof, she should at least be given the opportunity to try.

CONCLUSION

We conclude as a matter of law that the federal law and state administrative regulations governing Medicaid permit those 65 or older to participate in a pooled supplemental or special needs trust under the provisions of 42 U.S.C. § 1396p(d)(4)(C). We also conclude as a matter of law that the terms of the ARCare Trust II as set forth in the Transfer-Joinder Agreement entered into by Hutson satisfy the Medicaid federal and state requirements for a pooled supplemental or special needs trust. Furthermore, we conclude as a matter of law that the State of Kansas has the authority to impose a transfer penalty on Hutson under the rules set forth in 42 U.S.C. § 1396p(c)(1) and related administrative regulations if the transfer was for less than fair market value. However, because a determination of fair market value involves a question of fact, we vacate that part of the district court's order finding that Hutson did not receive fair market value for

16

the transfer of assets and remand this matter for an administrative hearing to resolve this factual question. Finally, in light of this conclusion, we deny Hutson's motion for attorney fees and costs.

Affirmed in part, vacated in part, and remanded with directions.